Patrick J. CHURCH, Appellant,

v.

STATE of Alaska, DEPARTMENT
OF REVENUE, Appellee.

No. S–7606.

Supreme Court of Alaska.

Feb. 12, 1999.

Rehearing Denied March 8, 1999.

Patrick J. Church, pro se, Homer.

Linda M. O'Bannon, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

MATTHEWS, Chief Justice.

## I.  *INTRODUCTION*

Appellant Patrick Church was denied a 1993 Permanent Fund Dividend (PFD) because he·was absent from the state for 274 days in 1992 while caring for his dying mother.  At the time of his absence, caring for a terminally-ill relative was not an excusable absence for PFD purposes.[1]  Church challenges the denial of his PFD, arguing that the Department of Revenue did not have authority to adopt certain PFD regulations, that the regulations and statutes defining a resident for PFD purposes were unreasonable and arbitrary, and that the Department of Revenue violated his procedural and substantive due process rights, his equal protection rights, his right to travel, and his rights to privacy and family relationships.  We conclude that Church's rights were not violated and that the denial was appropriate.

## II.  *FACTS AND PROCEEDINGS*

Patrick J. Church, an Alaska resident since 1975, was absent from Alaska from December 19, 1991, to September 30, 1992, while caring for his dying mother.  The Alaska Department of Revenue (DOR), Permanent Fund Dividend Division (the Division), denied his application for a 1993 PFD because he was absent from the state for more than 180 days during 1992, and his absence did not fit into one of the allowable absences enumerated in AS 43.23.095(8)(A)-(G) or 15 Alaska Administrative Code (AAC) 23.163(c) (1997).

The Division denied Church's appeal for a PFD in an informal conference decision on February 28, 1994, and Church moved for a formal hearing.  Revenue Hearing Officer Diane Colvin denied Church's motion for a formal hearing because there were no genuine issues of material fact in dispute and granted the State's motion for summary ad-

judication because Church did not "meet the requirements established by law for PFD eligibility during the 1993 eligibility year."  This denial was upheld by Superior Court Judge Charles K. Cranston.  Church appeals.

## III.  *DISCUSSION*

### A.  *Standard of Review*

We review administrative determinations independently.  *See Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).  Church does not dispute any factual findings; instead, he disputes the reasonableness and constitutionality of the applicable regulations and statutes.  We apply the substitution of judgment standard to issues of law not involving agency expertise, such as statutory interpretation and constitutional claims.  *See Madison v. Alaska Dep't of Fish and Game,* 696 P.2d 168, 173 (Alaska 1985).  However, this court "will not substitute [its] judgment for that of the agency with respect to the efficacy of [a] regulation nor review the 'wisdom' of a particular regulation."  *State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 624 (Alaska 1993) (citing *Alaska Int'l Indus. v. Musarra,* 602 P.2d 1240, 1245 n. 9 (Alaska 1979)).

### B.  *The Regulations under Which Church Was Denied a 1993 PFD Were Reasonable and Not beyond the Authority of the Commissioner to Adopt.*

Church was denied a 1993 PFD because he was absent from Alaska for more than 180 days during 1992—the qualifying year for the 1993 PFD—and his absence was not "specifically allowed under AS 43.23.095(8)(A)-(G) or 15 AAC 23.163(c)."  Alaska Statute 43.23.095(8) defines "state resident" for PFD purposes, and at the time of this action listed seven excusable absences for residents who were not in the state but intended to return.[2]  Subsection (F) of AS

---

1.  Effective January 1, 1997, the statute defining "state resident" for PFD purposes was amended to allow for absences to care for an "individual's terminally ill parent, spouse, sibling, child or stepchild."  AS 43.23.095(8)(H).

2.  At the time of this action, AS 43.23.095(8) provided in relevant part:

> (8) "state resident" means an individual who is physically present in the state with the intent to remain permanently in the state under the requirements of AS 01.10.055 or, if the individual is not physically present in the state,

43.23.095(8) allows for excusable absences for "other reasons which the commissioner may establish by regulation." Pursuant to this grant, the DOR promulgated 15 AAC 23.163—Allowable Absences. Subsection (c) of this regulation lists sixteen excusable absences, the last one of which provides in relevant part:

> (16) any other reason or reasons consistent with the individual's intent to remain a resident *provided the absence or cumulative absences do not exceed*
>
> (A) *180 days* if the individual is not claiming any of the absences listed in (1) through (15) of this subsection....

15 AAC 23.163(c)(16) (emphasis added).

Since neither the statute nor the regulation specifically listed the reason for Church's absence, and he was gone longer than 180 days, the Division was required to deny him a PFD. The regulation is clear and Church does not allege that the Division misinterpreted it; instead, he asserts that the regulation itself is invalid because it circumvents the legislative intent of AS 43.23.

We have held that AS 43.23.015(a), the statute concerning proof of eligibility for PFDs, authorizes "and require[s] the Commissioner of the Department of Revenue to promulgate regulations defining substantive eligibility requirements for PFDs." *State, Dep't of Revenue v. Bradley*, 896 P.2d 237, 239 (Alaska 1995) (citing *Cosio*, 858 P.2d at 624–25). *Cosio* held that a regulation can "exclud[e] permanent fund dividend applicants who arguably fall within the statutory definition of eligible applicants," as long as the exclusion is consistent with the statutory purpose and is not unreasonable or arbitrary. *Id.* at 625. In *Brodigan v. Alaska Dep't of Revenue*, 900 P.2d 728, 732 (Alaska 1995), we held that 15 AAC 23.42.175(c)(6), which denies PFDs to seasonal residents, was not beyond the authority of the commissioner to promulgate and that the regulation was consistent with the purpose of AS 43.23.095(8), which is "to limit payment of dividends to permanent residents." *Id.* The *Brodigan* opinion also stated that a legitimate purpose of the regulation was to "ease[ ] the administrative burden of attempting to determine what treatment level is sufficient to merit eligibility for a PFD." *Id.* The court reasoned that if seasonal residents were allowed PFD consideration on the mere showing that a physician thought a change of climate was beneficial, any person "could qualify for a PFD simply by visiting Alaska every year and establishing paper connections to Alaska...." *Id.*

■■■ Church argues that 15 AAC 23.163(c)(16) creates a bright line 180–day cut-off for discretionary review of absences that are not listed in the statute or regulation and is thus unreasonable and beyond the authority of the commissioner to promulgate.[3] This argument is similar to the challenge in *Brodigan* and the same reasoning serves to answer it. The Brodigans claimed that they should have been eligible for PFDs, even though the time they spent in the state

---

intends to return to the state and remain permanently in the state under the requirements of AS 01.10.055, and is absent only for any of the following reasons:

(A) vocational, professional, or other specific education for which a comparable program was not reasonably available in the state;

(B) secondary or postsecondary education;

(C) military service;

(D) medical treatment;

(E) service in Congress;

(F) other reasons which the commissioner may establish by regulation; or

(G) service in the Peace Corps[.]

Effective January 1, 1997, this section was amended to add the following excusable absences:

(H) *to care for the individual's terminally ill parent*, spouse, sibling, child, or stepchild;

(I) for up to 220 days to settle the estate of the individual's deceased parent, spouse, sibling, child, or stepchild; or

(J) to care for a parent, spouse, sibling, child or stepchild with a critical life-threatening illness whose treatment plan, as recommended by the attending physician, requires travel outside the state for treatment at a medical specialty complex.

AS 43.23.095(8) (emphasis added).

3. In deciding the validity of a regulation, this court considers "whether the regulation is consistent with the statutory purpose and is reasonable and not arbitrary." *Brodigan*, 900 P.2d at 732 (citations omitted). Administrative regulations are presumed to be valid and a legislative type of regulation such as 15 AAC 23.163(c)(16) will be reviewed with "considerable deference." *Id.* at n. 9 (citing *Cosio*, 858 P.2d at 624).

was less than the time they spent out of the state, because they had ties to Alaska and had not established a permanent residence outside of Alaska. 900 P.2d at 733. The Brodigans argued that 15 AAC 23.175(d) (1990), which at the time allowed for discretionary approval of *temporary* absences not listed, should have allowed them to receive a dividend. *Id.* However, the *Brodigan* court, citing to *State, Dep't of Revenue v. Gazaway,* 793 P.2d 1025, 1027 (Alaska 1990), held that temporary absences only include those that "are not longer in duration than the time spent in Alaska." *Id.* This ruling thus allows the state to limit discretionary review of nonlisted absences to those that are less than a defined period; in *Brodigan* half a year or less, here 180 days or less.

Church argues, generally, that any temporal restriction on PFD eligibility is unreasonable; he argues that consideration of residency for PFD purposes should be the same as consideration of state residency under AS 01.10.055, which focuses on one's subjective intent to remain. However, this court has recognized that "the residency requirement for PFD eligibility may differ from other residency requirements." *Brodigan,* 900 P.2d at 733 n. 12.

Since the purpose of AS 43.23.095(8) is to ensure that PFDs are only given to permanent residents and a legitimate function of corresponding regulations is to ease the administrative burdens of determining eligibility, *see id.* at 732, 15 AAC 23.163(c)(16) is consistent with its statutory purpose. · Additionally, since this court has ruled that limiting discretionary review of absences not for purposes listed in the statutes or regulations to absences shorter than half a year is not an abuse of discretion, *see id.* at 733; *Gazaway,* 793 P.2d at 1027, and that a regulation can be more restrictive than its authorizing statute, *see Cosio,* 858 P.2d at 625, 15 AAC 23.163(c)(16) is not unreasonable or arbitrary. The purpose of the requirement that

applicants fall into one of the enumerated excusable absences listed in AS 43.23.095(8) and 15 AAC 23.163(c) is to limit eligibility for PFDs to permanent residents. The legislature has given broad discretion to the commissioner to determine the factors which define a permanent resident. *See Cosio,* 858 P.2d at 624. Requiring those not otherwise defined as permanent residents in the statute or regulation to be present in the state for at least 180 days in the year in question is a reasonable interpretation of AS 43.23.095(8)'s objectives.[4]

C. *Church Was Not Denied Procedural Due Process When His Dividend Appeal Was Decided in a Summary Adjudication.*

■ Church argues that his procedural due process rights were violated when the Division denied his appeal in a summary adjudication. "There is no right to an evidentiary hearing in the absence of a factual dispute." *Human Resources Co. v. Alaska Comm'n on Post–Secondary Educ.,* 946 P.2d 441, 445 n. 7 (Alaska 1997); *see also Douglas v. State, Dep't of Revenue,* 880 P.2d 113, 117 (Alaska 1994); *Smith v. State, Dep't of Revenue,* 790 P.2d 1352, 1353 (Alaska 1990). In *Smith* we held that a hearing officer's summary adjudication of a child support award did not violate the appellant's statutory right to a hearing "because there were no material facts in dispute, and the hearing on the motion for summary judgment afforded [the appellant] a fair opportunity to contest legal issues raised by his appeal." *Id.* at 1353. Since Church did not challenge the facts, there was no factual dispute and Church was not entitled to an evidentiary hearing.

■ Church admits that he was absent from Alaska for 274 days during 1992 and that he was absent to care for his terminally-ill mother, which was not an excusable absence under AS 43.23.095(8) or 15 AAC 23.63(c) at that time. According to the statu-

---

4. Church argues that recently enacted subsections of AS 43.23.095(8), which allow for absences to care for ailing relatives, *see* AS 43.23.095(8)(H)(I) and (J), show that the Alaska legislature now favors such absences as a matter of policy. Church recognizes that these provisions do not apply to him because they did not become effective until January 1, 1997; however, he asserts that they show the state's policy concerning this issue. Since the new provisions did not apply to Church's case and the DOR did not abuse its discretion in adopting the regulations used to deny Church's dividend, it makes no difference that the law has now changed.

tory and regulatory system in place at the time, Church was ineligible for a PFD as a matter of law because he was out of the state for more than 180 days and did not fit into one of the excusable absences. *See* AS 43.23.095(8); 15 AAC 23.163(c)(16). "The crux of due process is an opportunity to be heard and the right to adequately represent one's interests." *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 353 (Alaska 1988) (citations omitted). Since there were no issues of fact presented and the law was clear, summary adjudication offered Church sufficient opportunity to be heard and to represent his interests. *See Smith,* 790 P.2d at 1353.

D. *The Statutory and Regulatory Scheme Denying Church a PFD Did Not Violate Substantive Due Process.*

■ Church argues that the list of excusable absences in AS 43.23.095(8) and 15 AAC 23.163(c) is unreasonable and arbitrary and should focus on subjective intent to return, instead of listing some excusable absences. He also contends that he has a property interest in the PFD and perhaps a liberty interest.

■ The standard for establishing a substantive due process violation is rigorous. A due process claim will only stand if the state's actions "are so irrational or arbitrary, or so lacking in fairness, as to shock the universal sense of justice." *Application of Obermeyer,* 717 P.2d 382, 386–87 (Alaska 1986) (citation omitted). In our view the dividend eligibility requirements do not reach the level of unfairness necessary to support a due process violation. The requirements are a reasonable way to ensure that only legitimate permanent residents receive PFDs. *See Brodigan,* 900 P.2d at 732. Some bright line rules are necessary to allow for the efficient distribution of dividends and to "ease[ ] the administrative burden of ... determin[ing] ... eligibility for a PFD." *Id.* Requiring an applicant to be present for at least 185 days if he or she does not fit into one of the listed excusable absences is not unreasonable. *See id.* at 733.

E. *Church's Equal Protection Rights Were Not Violated.*

■ Church argues that he was not provided the same benefits as the members of groups who were absent for one of the listed excusable absences, and as such his equal protection rights were violated. He further argues that minimum scrutiny is not the appropriate standard of review for PFD matters because the right to travel is implicated.

■ PFDs represent an economic interest. Equal protection claims concerning their denial are reviewed under minimum scrutiny. *See State v. Anthony,* 810 P.2d 155, 158 (Alaska 1991). Under the minimum level of scrutiny, the state only needs to show that the "challenged enactment was designed to achieve a legitimate governmental objective, and that the means bear a 'fair and substantial' relationship to the accomplishment of that objective." *Underwood v. State,* 881 P.2d 322, 325 (Alaska 1994) (citing *Cosio,* 858 P.2d at 629).

Despite Church's argument to the contrary, his equal protection claim should only receive minimum scrutiny. In *Brodigan* we held that even though an equal protection claim to a PFD involved the right to travel, it did not necessarily trigger heightened scrutiny. 900 P.2d at 734 n. 13. As discussed previously, the challenge in *Brodigan* was similar to the present situation, and this court only applied minimum scrutiny. Additionally, as discussed *infra,* we conclude that Church's right to travel is not violated in this case.

The objective of the challenged statutes and regulations is to ensure that only permanent residents receive dividends. *See Brodigan,* 900 P.2d at 732. In *Cosio,* we held that this goal was legitimate given that the purpose of the dividend program is to distribute equitably a portion of the state's wealth to Alaskans, to encourage people to stay in Alaska, and to increase citizen involvement in the management of the fund. 858 P.2d at 627. It remains so.

■ Further, allowing only enumerated excusable absences unless a person has been in the state more than half a year bears a fair and substantial relationship to ensuring

that the dividend goes only to permanent residents. The fair and substantial relationship test does not mean that there has to be a perfect fit between the government's actions and its objectives. *See State v. Anthony,* 810 P.2d at 159. In *Underwood* this court held that legislation aimed at improving the efficiency of and simplifying the PFD program was legitimate. 881 P.2d at 325. Cutting off discretionary review of applicants who do not fit into an excusable absence category and who have been outside the state more than 180 days in a year is a reasonable and efficient way to limit PFD eligibility to permanent residents.

### F. Church's Rights to Travel and to Family Relationships Were Not Infringed.

Church argues that his right to travel was infringed because receipt of a PFD was conditioned on his being in the state more than 185 days out of the year. Further, he argues that his familial relations rights were violated because he could not leave the state for more than 180 days to be with his dying mother without losing his dividend.

Both this court and the United States Supreme Court have recognized that not all durational residency requirements necessarily trigger heightened scrutiny. In *Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264 (Alaska 1984), this court explained that challenges concerning durational residency requirements would be addressed using a test that "balance[s] the nature and extent of the infringement on this right caused by the classification against the state's purpose in enacting the statute and the fairness and substantiality of the relationship between that purpose and the classification." *Id.* at 271 n. 10 (citation omitted). We utilized this test in *Brodigan* to conclude that a regulation disallowing PFDs to seasonal residents with medical problems did not infringe travel rights because "the State's purpose in awarding PFDs only to permanent residents outweighs the minor infringement on the Brodigans' choice of seasonal residences." 900 P.2d at 734 n. 13.

There is no violation of Church's right to travel when the *Brown* balancing test is applied to the present case. The infringement on Church's right to travel is relatively small and would not be likely to deter a person from traveling. *See Brown,* 687 P.2d at 273. An applicant has no vested property right in a permanent fund dividend and should not expect to receive a dividend if he doesn't meet the qualifications. *See Underwood,* 881 P.2d at 325. Additionally, as discussed *supra* in the equal protection analysis, the regulations and statutes in question bear a fair and substantial relationship to the state's legitimate objective of efficiently awarding PFDs only to permanent residents.

In *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986), the Supreme Court held that a statute which gave employment preference points only to veterans who had entered the military in New York and not to veterans who had entered the military elsewhere violated the constitutional right to travel. *Id.* at 911, 106 S.Ct. 2317. However, the Court noted that bona fide residence requirements that distinguish only between residents and non-residents and do not treat residents differently based solely on the time when they became residents will not generally violate the right to travel. *Id.* at 904 n. 3, 106 S.Ct. 2317. The Supreme Court explained that "[a] bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for residents are enjoyed only by residents." *Id.* (quoting *Martinez v. Bynum,* 461 U.S. 321, 328–29, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983)). As previously explained, the PFD regulations and statutes in question are bona fide requirements which ensure that benefits "provided for residents are enjoyed only by residents," and as such do not violate the constitutional right of interstate travel.

Church also argues that because he could not receive a PFD if he stayed with his mother out of the state for more than 180 days, his right to receive a PFD was conditioned on his not spending time with his mother. This argument is essentially a corollary of the right to travel argument. The only reason Church's familial rights were infringed is because he had to travel out of

the state to see his mother. Had his mother lived in the state there would have been no violation. Because we conclude that the PFD eligibility requirement did not violate Church's right to travel, Church's familial rights, which were contingent on his right to travel, were also not violated.

## IV. *CONCLUSION*

The regulations denying Church a PFD were valid, none of his rights were violated, and the denial of his PFD was appropriate. The judgment of the superior court is AFFIRMED.