**Steve ELDRIDGE and Lisa Eldridge, husband and wife, and for their children, Deanna Eldridge, Joseph Eldridge, Jessica Eldridge, and Bryant Eldridge, Appellants,**

**v.**

**STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.**

No. S–8697.

Supreme Court of Alaska.

Sept. 24, 1999.

Douglas L. Blankenship, Fairbanks, for Appellants.

Linda T. McKinney, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. *INTRODUCTION*

The Department of Revenue denied Steve and Lisa Eldridge and their four children 1995 Permanent Fund dividends (PFDs) because the family was absent from the state for 328 days during 1994. The superior court upheld this denial. We affirm.

## II. *FACTS AND PROCEEDINGS*

Steve and Lisa Eldridge have both lived in Alaska for many years. They have owned their home in North Pole since 1986. All four of their minor children were born in

Alaska. Steve, a journeyman plumber, has worked for Slayden Plumbing in Fairbanks since 1983. Steve was selected to supervise two contracts awarded to Slayden Plumbing to help construct prefabricated homes for various Alaska villages; these homes were to be constructed in Anacortes, Washington. In January 1994, the Eldridges temporarily moved to Anacortes for a total period of 328 days. They did not rent out their North Pole home. Steve and Lisa maintained their Alaska driver's licences, their vehicles remained registered in Alaska, and they did not pay Washington taxes. A North Pole neighbor looked after the family pet. In short, the Eldridges were Alaskans living in Washington.

In March 1995, the Eldridges applied for their 1994 PFDs. Unfortunately for the Eldridges, they were absent from Alaska for most of 1994, as discussed above. Since this absence exceeded 180 days and was not of the type specifically allowed under either AS 43.23.095(8)(A)-(G)[1] or 15 AAC 23.163(c),[2]

---

1. At the time the Department denied the Eldridges their PFDs, AS 43.23.095(8) provided as follows:

"state resident" means an individual who is physically present in the state with the intent to remain permanently in the state under the requirements of AS 01.10.055 or, if the individual is not physically present in the state, intends to return to the state and remain permanently in the state under the requirements of AS 01.10.055, and is absent only for any of the following reasons:

(A) vocational, professional, or other specific education for which a comparable program was not reasonably available in the state;

(B) secondary or postsecondary education;

(C) military service;

(D) medical treatment;

(E) service in Congress;

(F) other reasons which the commissioner may establish by regulation; or

(G) service in the Peace Corps[.]

2. At the time of the Eldridges' denial, 15 AAC 23.163 provided for the following "allowable absences":

(c) An individual who otherwise qualifies, but who was not physically present in Alaska for the entire qualifying year, may be eligible for a dividend if the individual was absent primarily for one of the following reasons:

(1) receiving full-time technical training ... [;]

(2) attending, on a full-time basis, an academic institution, seminar, or other recognized

course or program for continuing professional educational development ...;

(3) receiving other special education assistance;

(4) receiving full-time education in any of the seventh through twelfth grades;

(5) enrollment and attendance in good standing as a full-time student at a college, university, or junior or community college ... [;]

(6) serving on active duty as a member of the armed forces of the United States;

(7) receiving continuous medical treatment if the treatment is on the advice of a licensed physician;

(8) accompanying a minor child who is absent for medical reasons as listed in (7) of this subsection;

(9) serving in the United States Congress as a representative or senator for the State of Alaska;

(10) serving on the staff of a representative or senator from Alaska in the United States Congress;

(11) serving as a full-time volunteer under the Peace Corps Act;

(12) serving as an employee of the State of Alaska, including employment in a field office;

(13) repealed 10/8/94;

(14) actively participating on a United States national athletic team ... [;]

(15) accompanying an eligible individual as the minor dependent or disabled dependent of the eligible individual; or

(16) any other reason or reasons consistent with the individual's intent to remain a resi-

the Alaska Department of Revenue declared the Eldridges ineligible to receive 1995 PFDs.

The Eldridges appealed and requested an informal administrative hearing. The hearing officer upheld the Department's decision.

Next, the Eldridges requested a formal administrative hearing. The request for the hearing was denied and a summary adjudication was issued denying their claim.

The Eldridges appealed this decision to the superior court. They argued, among other things, that the "allowable absences" provision violates the equal protection clause of the Alaska Constitution because it treats Alaskans employed by Alaska companies working outside the state differently than state employees working outside the state. The superior court held that:

> The right to a permanent fund dividend is subject only to minimal scrutiny, and therefore the challenged exclusion must be designed to achieve a legitimate governmental objective and must bear a fair and substantial relationship to the statute's objectives. This court finds that the distinction drawn between state employees and private employees bears a fair and substantial relationship to the permanent fund dividend program's legitimate objectives.

This appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ There are no disputed factual findings. We review administrative determina-

tions of law independently and substitute our judgment for that of the agency.[3]

### B. The Eldridges Were Not Denied Equal Protection.

■ The Eldridges filed their appeal to this court on September 11, 1998. On February 11, 1999 we issued our decision in Church v. State, in which we held that neither AS 43.23.095(8) nor 15 AAC 23.163(c) violates the equal protection clause of the Alaska Constitution.[4] Church largely controls this case.

In Church, we held that (1) PFDs are an economic interest and, accordingly, PFD eligibility regulations are subject to minimum scrutiny review to determine if they violate the equal protection clause of the Alaska Constitution;[5] and (2) AS 43.23.095(8) and 15 AAC 23.163(c) survive minimum scrutiny review because they bear a fair and substantial relationship to a legitimate government objective.[6]

While Church did not specifically address the Eldridges' argument that 15 AAC 23.163(c) impermissibly discriminates between Alaskans who work out of state for the State of Alaska and those who work out of state for an Alaskan private employer, we find that this private/public employment distinction does not violate the Eldridges' equal protection rights.

■ We are sympathetic to the Eldridges' particular circumstances; there is strong evidence that they intended to return to Alaska after the Anacortes assignment. However,

---

dent provided the absence or cumulative absences do not exceed

   (A) 180 days if the individual is not claiming any of the absences listed in (1) through (15) of this subsection provided that the individual

    (i) established the individual's principal home in Alaska before leaving Alaska;

    (ii) has taken no action inconsistent with an intent to maintain the individual's principal home in Alaska;

    (iii) has taken no action to establish or maintain a principal home outside of Alaska; and

    (iv) returned to the individual's principal home in Alaska at the conclusion of the absence;

   (B) the greater of 120 days, one school semester during which the individual was enrolled, or one school quarter during which the

individual was enrolled, in addition to any absence or cumulative absences under (1) or (5) of this subsection if the individual is not claiming any absence under (2)-(4) or (6)-(15) of this subsection; or

   (C) 45 days in addition to any absence or cumulative absences under (1)-(15) of this subsection.

3. See Church v. State, 973 P.2d 1125, 1127 (Alaska 1999).

4. See id. at 1130–31.

5. See id. at 1130.

6. See id. at 1130–31.

under a minimum scrutiny analysis, we do not determine if a regulation is perfectly fair to every individual to whom it is applied, but rather, as previously noted, we must decide only if the regulation bears a fair and substantial relationship to a legitimate government objective.[7] The regulation here precludes receipt of a dividend by the Eldridges, but would have allowed it if Steve Eldridge had been employed by the State. While the regulation as applied under the facts of this case may seem harsh, there is a fair and substantial relationship generally between the regulation and the State's legitimate interests in promoting Alaska residency, preventing fraud in the distribution of PFDs,[8] and simplifying its adjudication procedures. There is not a perfect fit between means and ends, as this case probably demonstrates, but there need not be a perfect fit for the regulation to pass the relatively low constitutional test applied when the individual's interest is economic.[9]

The Eldridges further argue that *Church* should be modified to allow "all absent applicants an opportunity to prove Alaska residency intent." The Eldridges correctly point out that the challenged statute and regulation give different treatment to different classes of absent applicants by allowing some applicants, but not all, an opportunity to prove their intent to remain Alaska residents and thus be eligible to receive a PFD. However, the Eldridges erroneously argue that *Church* did not address this claim of disparate treatment.

We held in *Church* that the legitimate governmental objective of the challenged statutes was to ensure that only permanent residents receive a PFD.[10] We further held: "Cutting off discretionary review of applicants who do not fit into an excusable absence category and who have been outside the state more than 180 days in a year is a reasonable and efficient way to limit PFD eligibility to permanent residents."[11] Since the Eldridges were absent from Alaska for more than 180 days in 1994 for an "inexcusable" reason, they are not eligible for a 1995 PFD.

### C. The Eldridges Are Not Public Interest Litigants.

The Eldridges also argue that they qualify as public interest litigants and therefore are not subject to the prevailing party attorney's fees rule. To qualify as "public interest litigants," they must show, among other things, that they lack "a sufficient economic incentive to file suit."[12] Since the PFD for 1995 was $990[13] and there are six family members, the Eldridges had a sufficient economic incentive to pursue this litigation. Accordingly, they cannot be considered public interest litigants.

## IV. CONCLUSION

Because the Eldridges were not denied equal protection when their application for their 1995 PFD was turned down, and because they are not public interest litigants, we AFFIRM the actions of the superior court.

---

7. See State v. Anthony, 810 P.2d 155, 159 (Alaska 1991) ("fair and substantial relationship test does not require a perfect fit between a legislative classification and the government objective it is intended to further"); Wilson v. Municipality of Anchorage, 669 P.2d 569, 572 (Alaska 1983) ("less than perfect fit between the means and ends will be tolerated" where only economic interests at stake).

8. There is substantial uncertainty and potential for abuse inherent in cases where employees are transferred by private employers to positions outside Alaska. These problems do not exist, at least on the same scale, with regard to state employees.

9. See id.

10. See Church v. State, 973 P.2d at 1130.

11. Id. at 1131.

12. Anchorage Daily News v. Anchorage Sch. Dist., 803 P.2d 402, 404 (Alaska 1990).

13. See Alaska Department of Revenue, Yearly Dividend Amounts (last modified May 6, 1999) http://www.revenue.state.ak.us/pfd/ yearamou2.htm>.