Brian A. ROSS, and Andrew, Matthew, and Emily Ross (minor children) Appellants,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Appellee.

No. S–14362.

Supreme Court of Alaska.

Sept. 28, 2012.

Rehearing Denied Jan. 10, 2013.

Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for Appellants.

Michael J. Barber, Assistant Attorney General, Richard Svobodny, Acting Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Brian Ross has been absent from the State of Alaska since 1990, first as a student at the

United States Naval Academy and later as a career Marine Corps officer. Despite his absence, Ross maintained Alaska residency and received a permanent fund dividend each year. In 1998 the Alaska Legislature amended the dividend qualifications to provide that anyone who was allowably absent for ten consecutive years would no longer be eligible for dividends. This ten-year rule, however, does not apply to members of the United States Congress, their staffs, or the families of either. In 2009 Ross and his children applied for dividends but were denied because Ross had then been absent for ten consecutive years from the enactment of the ten-year rule. They appealed the denial, but the denial was upheld at an informal agency appeal, a formal agency appeal, and by the superior court.

Ross now appeals to this court, arguing that the ten-year rule violates his equal protection and substantive due process rights. But because the ten-year rule and congressional exception are fairly and substantially related to the legitimate state interests of limiting dividends to permanent Alaska residents and preventing fraud, and because the ten-year rule is rationally related to the legitimate state purpose of reducing administrative burdens, we affirm the superior court as to these claims. Ross also argues that the ten-year rule is unconstitutionally retroactive. But because the rule does not give his pre-enactment conduct a different legal effect, we affirm the superior court on this point as well.

## II. FACTS AND PROCEEDINGS

Brian Ross was born and raised in Alaska. In 1990 he left the state to attend the United States Naval Academy. Following his graduation from the Naval Academy, Ross pursued a career in the Marine Corps that has prevented him from living in the State of Alaska for the past 18 years. Despite his absence, Ross has maintained his Alaska residency.

Alaska Statute 43.23.008 provides that absent individuals may still remain eligible for the dividend if their absences are for secondary education or active duty in the military, among other reasons. Accordingly, Ross received a permanent fund dividend every year since the first one was issued in 1982. Starting in 1996, after he had been absent five years, Ross was required to provide documentation every year demonstrating to the Department of Revenue's satisfaction that at all times during his absence he had intended to return to Alaska to remain permanently. From 1996 to 2008, he did this every year, detailing his nearly annual visits to Alaska, his ownership of real property in Alaska, his maintenance of Alaska residency, his titling of vehicles in Alaska, his consistent voting in Alaska elections, his purchase of resident hunting and fishing licenses, and his familial ties to Alaska.

In 1998 the Alaska Legislature amended AS 43.23.008 to provide that "[a]n otherwise eligible individual who has been eligible for the immediately preceding 10 dividends despite being absent from the state for more than 180 days in each of the related 10 qualifying years is only eligible for the current year dividend if the individual was absent 180 days or less during the qualifying year."[1] The revised statute, which became effective in 1999, created a ten-year rule whereby, starting in 2009, individuals who had been allowably absent from the state for ten straight years would no longer receive dividends until they returned to the state.

Because of the rule, the State denied Ross a dividend for the first time in 2009. Because Ross was not eligible to receive a dividend, his three minor children were also denied dividends.[2] On behalf of himself and

---

1. AS 43.23.008(c).

2. See 15 Alaska Administrative Code (AAC) 23.113(b)(1) and (e) (2012):
 (b) A child who otherwise qualifies is eligible to receive a dividend if the child is
 (1) in the lawful and physical custody of a sponsor who is eligible for a dividend, would have been eligible for a dividend had the sponsor filed timely, was only ineligible due to AS 43.23.005(d) [ineligibility due to conviction or incarceration], or forfeited dividends under AS 43.23.035(a) or (c) [ineligibility due to fraud or aiding an ineligible collection of a dividend], and who is
 (A) an adult relative in a full, half, or step relationship, or is a legal guardian;
 . . . .

his children, Ross filed an informal agency appeal, arguing that the ten-year rule did not apply to him, that he was a deserving Alaska resident, and that the ten-year rule required him to forgo either his dividend or his career. The appeal was denied. A subsequent formal agency appeal was also denied. He then appealed in the superior court. In the superior court Ross argued: (1) that the ten-year rule violated the equal protection clauses of the Alaska and federal constitutions because it applied to military members but not to members of Congress and their staffs and because it unconstitutionally distinguished between residents absent for ten years and those who were not;[3] (2) that the ten-year rule violated Ross's substantive due process rights; (3) that the ten-year rule was unconstitutionally retroactive because it provided new consequences to a decision—attending the U.S. Naval Academy—that Ross had made before the rule was created; and (4) that having provided Ross with certain statutory eligibility requirements in 1990, the State was now estopped from changing his eligibility requirements. The superior court rejected each of these arguments, upholding the agency's denial of dividends to Ross and his children. The superior court subsequently denied Ross's motion for reconsideration. Ross now appeals.

## III. STANDARD OF REVIEW

■ When the superior court sits as an intermediate appellate court reviewing an agency decision, we "do not defer to the superior court's decision."[4] "Constitutional issues are questions of law subject to independent review."[5] Whether estoppel applies is a legal question to which we apply our independent judgment.[6]

(e) An application for a dividend may be filed on behalf of a child only by the adult resident through whom the child claims residency, or by another authorized representative.

**3.** AS 43.23.008(c) ("This subsection does not apply to an absence under (a)(9) or (10) of this section [creating allowable absences for members of the United States Congress and their staff members] or to an absence under (a)(13) of this section [creating allowable absences for spouses and dependents of allowably absent individuals] if the absence is to accompany an individual who is absent under (a)(9) or (10) of this section.").

## IV. DISCUSSION

On appeal, Ross raises essentially the same four arguments that he did in his appeal before the superior court. He also adds a fifth argument that the superior court erred by relying on an unpublished memorandum opinion of this court and that its ruling should therefore be reversed. Because none of Ross's arguments merit reversal, we affirm the superior court decision upholding the Department of Revenue's denial of dividends to Ross and his children.

### A. The Ten–Year Rule Does Not Violate Equal Protection.

Ross first argues that AS 43.23.008(c) violates the equal protection clauses of the Alaska and federal constitutions for two reasons: First, it unconstitutionally distinguishes between residents absent for ten years and those absent for fewer (or not at all); and second, because it unconstitutionally distinguishes between members of Congress (and their staffs) and those who are absent for other reasons.

### 1. Equal protection standards of review

■ We have heard state equal protection challenges to permanent fund dividend eligibility requirements several times before. Most recently, in *Harrod v. State, Department of Revenue*, we set out the analytical basis for our decisions in this area:

> We have adopted a flexible "sliding scale" test for reviewing equal protection claims. First, we determine what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most

**4.** *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011).

**5.** *Id.* (citing *Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 978 (Alaska 2007)).

**6.** *Hidden Heights Assisted Living, Inc. v. State, Dep't of Health & Soc. Servs., Div. of Health Care Servs.*, 222 P.3d 258, 268 (Alaska 2009) (citing *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 355 (Alaska 2000)).

important variable in fixing the appropriate level of review. Second, we examine the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest. Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.

We have previously held that PFDs are not basic necessities or a fundamental right. Instead, a PFD is merely an economic interest and therefore is entitled only to minimum protection under our equal protection analysis. Restrictions on economic interests are reviewed at the low end of the sliding scale. Our review is therefore limited to considering whether this regulation was designed to achieve a legitimate governmental objective and whether it bears a fair and substantial relationship to accomplishing that objective. At this level of review, we do not determine whether a regulation is perfectly fair to every individual to whom it is applied.[7]

We have similarly applied the lowest level of scrutiny when reviewing equal protection challenges to dividend eligibility requirements under the federal constitution. In *State, Department of Revenue, Permanent Fund Dividend Division v. Cosio*, we emphasized that "a dividend is a matter of grace, a governmental 'benefit' indistinguishable from other forms of social welfare, which the [U.S. Supreme] Court suggested merits mere rational basis review. Thus, the State's dividend eligibility requirement only warrants

rational basis review." [8] Therefore, the ten-year rule and the congressional exception pass federal constitutional muster if they are "rationally related to a legitimate state interest." [9] .

## 2. The ten-year rule does not unconstitutionally distinguish between Alaska residents absent for ten years and Alaska residents absent for fewer than ten years.

■ Ross argues that the ten-year rule violates the federal Equal Protection Clause because it serves none of the State's three explicit purposes in enacting the permanent fund dividend, as described by the United States Supreme Court in *Zobel v. Williams:*

(1) to provide a mechanism for equitable distribution to the people of Alaska of at least a portion of the state's energy wealth derived from the development and production of the natural resources belonging to them as Alaskans; (2) to encourage persons to maintain their residence in Alaska and to reduce population turnover in the state; and (3) to encourage increased awareness and involvement by the residents of the state in the management and expenditure of the Alaska permanent fund.[10]

Ross does not argue that the ten-year rule violates the Equal Protection Clause of the Alaska Constitution.

As the State points out, "minimal scrutiny under the Alaska Constitution is more demanding than rational basis review under the U.S. Constitution"; thus, if the rule does not violate Alaska's Equal Protection Clause, it does not violate the federal Equal Protection Clause.[11] The State proceeds to argue that

7. 255 P.3d 991, 1001 (Alaska 2011) (citations and internal quotation marks omitted).

8. 858 P.2d 621, 627 (Alaska 1993) (internal quotation marks omitted) (quoting *Plyler v. Doe*, 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

9. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

10. 457 U.S. 55, 61 n. 7, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (quoting ch. 21, § 1(b), SLA 1980).

11. *See State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991) ("Our analysis focuses on the Alaska Constitution. Alaska's equal protection clause is more protective of individual rights than the federal equal protection clause.") (internal citations omitted); *see also Isakson v. Rickey*, 550 P.2d 359, 362 n. 14 (Alaska 1976) (noting that Alaska's equal protection standard raises "the level of the lower tier from virtual abdication to genuine judicial inquiry"), *abrogated on other grounds by Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255 (Alaska 1980).

the ten-year rule does not violate the Alaska Equal Protection Clause because it "bears a fair and substantial relationship to the legitimate governmental objectives" of limiting dividends to permanent Alaska residents and preventing fraud—both of which the State claims are corollary to the three interests enumerated in *Zobel*. The State also maintains that the ten-year rule bears a fair and substantial relationship to the legitimate state interest of easing the administrative burden of processing applications, an interest the State argues this court has accepted in its previous cases.

Ross argues that the United States Supreme Court in *Zobel* identified the legitimate state interests for any classification relating to the dividend: (1) equitably distributing the State's energy wealth to the people of Alaska, (2) encouraging people to maintain residence in Alaska, and (3) encouraging awareness and involvement by residents in the fund's management.[12] Ross argues that the ten-year rule is not rationally related to the first of these because it is patently inequitable to deny the dividend to a person who "has honorably served his state and his country" in the Marine Corps, whose "hands are immaculate," and who has shown "fifteen years of accumulated proofs of residency." Ross argues that the ten-year rule is not rationally related to the second of these because the ten-year rule, by stripping Ross of a financial benefit of residency, encourages him to give up his Alaska residency and seek the benefits of residency in the state in which he lives. Finally, Ross argues that the ten-year rule is not rationally related to the third objective because denying Ross the dividend encourages him to take up residency and vote somewhere else.

The State proffers three justifications for the ten-year rule. The first two, "[l]imiting PFDs to permanent Alaska residents and preventing fraud in the distribution of PFDs," are, the State argues, "legitimate governmental objectives given that the purposes of the PFD program are to equitably distribute a portion of the state's mineral wealth to Alaskans, to encourage people to stay in Alaska, and to increase citizen involvement in the management of the permanent fund." The State relies on *Church v. State, Department of Revenue* for this argument.[13] In that case, Church was denied a dividend in 1993 because he had spent 274 days in 1992 out of state caring for his dying mother, which at the time was not an allowable absence.[14] Church argued that the regulations[15] delineating allowable absences that denied him a dividend violated equal protection because he was not provided the same benefits as those whose absences were listed as excusable absences.[16] We rejected that claim, holding that "[c]utting off discretionary review of applicants who do not fit into an excusable absence category and who have been outside the state more than 180 days in a year is a reasonable and efficient way to limit PFD eligibility to permanent residents."[17]

This case presents a slightly different question than *Church*, because here Ross has been denied a dividend based not on the purpose of his absence, but rather on the duration of his absence. Nonetheless, here, as in *Church*, cutting off discretionary review of applications after a ten-year absence is a way of limiting the dividend to permanent

---

**12.** *Zobel*, 457 U.S. at 61 n. 7, 102 S.Ct. 2309.

**13.** 973 P.2d 1125 (Alaska 1999).

**14.** *Id.* at 1127.

**15.** At the time Church was denied a dividend, AS 43.23.095(8), the statute defining allowable absences included seven categories of allowable absences, plus an eighth subpart "allow[ing] for excusable absences for other reasons which the [Department of Revenue] commissioner may establish by regulation." *Id.* at 1127–28 (citations and internal quotation marks omitted). Pursuant to this catch-all, 15 AAC 23.163(c) listed 16 separate categories of allowable absences, none of which covered Church. *Id.* at 1128. Church was therefore arguing that it was a Department of Revenue regulation, and not a statute, that was constitutionally infirm. Nonetheless, the constitutional analysis would be the same for a regulation or a statute.

**16.** *Id.* at 1130.

**17.** *Id.* at 1131.

residents. As Ross himself explained in his original agency appeal, the ten-year rule

> was no doubt intended to prevent an individual who might move to the State of Alaska, establish residency to qualify for a dividend, and then at some point, leave the state with no intention of returning, and yet still attempt to collect a dividend while in the Lower 48. The vast majority of U.S. servicemen and women who get stationed in Alaska as members of the U.S. Army and Air Force probably fit into this category. The typical individual gets stationed in the State for a 3–year tour during which they establish residency, collect a dividend for a few years, and then get military orders to another base or station. He or she rarely or never returns to the State, probably establishes residency somewhere else at some point, and yet still attempts to collect their precious PFD windfall. While the individual might make it past the 5–year absence rules and regulations, the ten year timeframe as per the statutes is surely made to be the ultimate disqualifier.

Ross's argument illustrates that a rational person could conclude that the ten-year rule furthered the State's interest in preventing fraud and limiting the dividend to bona fide Alaska residents. Even if application of the rule may seem harsh in the case of a lifelong Alaskan Marine who, the superior court noted, "strongly demonstrates [his] passion for retaining residency in Alaska," as we have observed in past cases, when reviewing dividend eligibility requirements under the Alaska Equal Protection Clause, "we do not determine whether a regulation 'is perfectly fair to every individual to whom it is applied.'"[18] "[T]he possible exclusion of one deserving recipient does not make the regulation unreasonable."[19]

The State also proffers a third justification for the law, arguing that "the ten-year rule helps ease the burden on [Department of Revenue] staff of determining residency and eligibility for each of the more than 600,000 people who apply for a PFD each year." As the State points out, we have previously noted that the State has a legitimate interest in creating rules that ease the administrative burden of processing dividend applications.[20] Ross responds that "under *Zobel*, the State must create mechanisms for *equitable distribution*—not burden-free distribution." (Emphasis in original.)

But in this case, as in *Church*, by eliminating the need for discretionary review of dividend applications for those who have been out of the state for ten straight years, the ten-year rule functions as an "efficient way to limit PFD eligibility to permanent residents."[21]

### 3. The congressional exemption to the ten-year rule does not violate equal protection.

■ The ten-year rule applies to all otherwise excusably absent residents except for those "serving as a member of the United States Congress," "serving on the staff of a member from this state of the United States Congress," and accompanying, as a spouse or a dependent, a member of Congress or congressional staffer.[22] Ross argues that this congressional exception, by exempting legislators and their staffs and families from consequences of being absent, violates the equal protection clauses of both the federal and Alaska constitutions. Ross's federal equal protection challenge is again based on *Zobel*. He argues that the congressional exception is not rationally related to a legitimate state purpose because: (1) it is inequitable to "den[y] a PFD to a lifelong Alaskan in harm's way" while awarding dividends to

---

**18.** *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 1001 (Alaska 2011) (quoting *Eldridge v. State, Dep't of Revenue*, 988 P.2d 101, 104 (Alaska 1999)).

**19.** *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Bradley*, 896 P.2d 237, 240 (Alaska 1995).

**20.** *See Harrod*, 255 P.3d at 1001 ("The state processes more than 600,000 PFD applications each year. Reducing the burden of individually examining PFD applications is a legitimate governmental objective . . . .") (footnote omitted).

**21.** *Church*, 973 P.2d at 1131.

**22.** AS 43.23.008(a)(9), (10), & (13).

members of Congress "who voted to send [Ross] to Iraq"; (2) "[g]iving politicians money to remain in the Lower 48 does not encourage them ... to reside permanently in Alaska"; and (3) the alleged "[s]kullduggery" by which the congressional exception was adopted—through a technical amendment to the ten-year rule—discourages voters from participating in Alaska politics. Ross recognizes that in *Harrod* we upheld a rule "allowing people who are serving in Congress ... to establish residency by proof of their employment" rather than having to individually prove their subjective intent to return.[23] In that case, we concluded that the rule eased the State's administrative burden in determining eligibility because it allowed Department of Revenue workers to make summary decisions on eligibility for members of Congress and their staffs, rather than requiring the Department to sift through documentation to determine whether each member of Congress and each congressional staffer had the subjective intent required to receive a dividend.[24]

The State argues that "the exception recognizes that prolonged absences by members of Congress and their staff are distinct from (i.e., not similarly situated to) other allowable absences," because "members of Congress and their staff must spend much of their time in the nation's capital" while "maintain[ing] significant ties to Alaska." The State argues that the legislature could reasonably conclude that the "unique nature" of absences for members of Congress and their staffs "is consistent with an intent to return to Alaska." Here the legislature apparently concluded that the ties that bind a member of Congress or a congressional staffer to Alaska are strong enough to indicate an intention to return to Alaska indefinitely to reside, thus vitiating concerns of fraud and dividends being paid to non-Alaskans. Just as in *Harrod* the status of serving as a member of Congress or congressional staffer served as a proxy for proving subjective intent to remain, so the congressional exception bears a fair and substantial relationship to the goals of limiting the dividend to permanent Alaska residents and preventing dividend fraud.

## B. The Ten–Year Rule Does Not Deny Ross Substantive Due Process.

■ Ross next argues that the ten-year rule denies him substantive due process because it "denie[d] a PFD to a lifelong Alaskan Marine, while providing an exception for the Congressman who sent him to war, shock[ing] the universal sense of justice." Although he notes that in *Church v. State, Department of Revenue*, we held that "dividend eligibility requirements do not reach the level of unfairness necessary to support a due process violation" but "are a reasonable way to ensure that only legitimate permanent residents receive PFDs,"[25] Ross nonetheless argues that the ten-year rule is different from the requirement in *Church* because the rule does not apply to members of Congress.

■ In *Church*, we noted that "[t]he standard for establishing a substantive due process violation is rigorous. A due process claim will only stand if the state's actions 'are so irrational or arbitrary, or so lacking in fairness, as to shock the universal sense of justice.'"[26] As the administrative law judge suggested, the ten-year rule may seem to "disparage the value and honor of those who serve the nation and the sacrifices made by their families." But because the ten-year rule "did not violate equal protection ... and because a statute that meets the higher equal protection standard will always satisfy the demands of substantive due process,"[27] we cannot conclude that Ross was denied substantive due process by the ten-year rule.[28]

23. 255 P.3d at 1001.

24. *Id.*

25. 973 P.2d at 1130.

26. *Id.* (quoting *Application of Obermeyer*, 717 P.2d 382, 386–87 (Alaska 1986)).

27. *Pfeifer v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 260 P.3d 1072, 1083 (Alaska 2011) (internal quotation marks omitted).

28. Ross also suggests briefly that the congressional exception violates substantive due process because it "was proposed under dubious circumstances that frustrated the original intent and sponsor of" the house bill that ultimately became the statutory amendment including the ten-year

### C. The Ten–Year Rule Is Not Illegal Retrospective Legislation.

 Ross next argues that the ten-year rule is "illegal[ ] retrospective legislation because it gives [Ross's] pre-enactment conduct [of choosing to pursue a career in the Marine Corps] a different legal effect from that which it would have had without the passage of the statute." Ross contends that he could not now comply with the ten-year rule unless he were to go AWOL or to resign from the Marine Corps.

The State responds that the ten-year rule is not retroactive because it "affects whether [Ross's] absence in calendar year 2008 is allowable for purposes of qualifying for a 2009 PFD," and not "whether [Ross's] pre-enactment absences were allowable."

In *Pfeifer v. State, Department of Health & Social Services, Division of Public Assistance*, we described the meaning of retroactivity:

A statute will be considered retroactive insofar as it gives to pre-enactment conduct a different legal effect from that which it would have had without passage of the statute. A statute creates this different legal effect if it would impair rights a party had when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.[29]

The ten-year rule is not retroactive because it did not change the legal effect of Ross's eight years of absences occurring before the rule's enactment. It only affects whether his absence in 2008 was allowable, and only considers the absences for the ten years following the rule's enactment. The ten-year rule was enacted in 1999 [30] and did not affect Ross's dividend eligibility until the 2009 dividend. Although Ross's absences for the ten years following the enactment of the rule may have had their genesis in his pre-enactment decision to attend the Naval Acad-

emy, it was his continuing absence for ten years following the rule's enactment, and not his choice of school or career, that ultimately affected his eligibility for the dividend. The rule was therefore not retroactive.

### D. The State Is Not Estopped From Denying Ross A Permanent Fund Dividend.

 Ross also argues that the State is estopped from denying him a dividend after it "asserted" eligibility requirements in 1990 on which he "reasonably relied" in choosing a military career.

Although the parties address the elements of equitable estoppel, promissory estoppel is the appropriate doctrine to be analyzed in this case. In *Simpson v. Murkowski*, we heard a claim, brought as an action in equitable estoppel, against Governor Frank Murkowski's elimination of longevity bonuses for seniors.[31] We explained that

the primary difference between promissory and equitable estoppels is that the former is offensive, and can be used for affirmative enforcement of a promise, whereas the latter is defensive, and can be used only for preventing the opposing party from raising a particular claim or defense. Because Simpson seeks to enforce an alleged promise, the four-part test for *promissory* estoppel set forth by this court in *Zeman* [*v. Lufthansa German Airlines*, 699 P.2d 1274 (Alaska 1985)] is the appropriate test.[32]

In this case, Ross is seeking to enforce an alleged promise—namely the State's supposed promise to pay him a dividend—and not to prevent the State from raising a defense to paying a dividend. Therefore, the promissory estoppel analysis controls this case.

 In order to prove promissory estoppel, Ross must establish:

---

rule and congressional exception. But as the State points out, "[a]mending a bill in a way that the bill's sponsor does not support is a typical result of the legislative process and does not offend due process."

**29.** 260 P.3d 1072, 1079–80 (Alaska 2011).

**30.** Ch. 44, § 5, SLA 1998.

**31.** 129 P.3d 435 (Alaska 2006).

**32.** *Id.* at 440 n. 18 (citations and internal quotation marks omitted).

(1) The action induced amounts to a substantial change of position;

(2) it was either actually foreseen or reasonably foreseeable by the promisor;

(3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and

(4) enforcement is necessary in the interest of justice.[33]

■■■ "To make out a claim for promissory estoppel, one must show that 'an actual promise was made.'"[34] In this case, Ross fails to meet the third prong because the eligibility requirements in existence in 1990 did not amount to an enforceable promise that those eligibility requirements would never be amended. As the State puts it, "the passage of a statute is not an assertion by one legislature that a subsequent legislature will not later amend the statute." As a matter of law, Ross cannot rely on an extant law as a promise that that law will continue to have the same effect in perpetuity. Because Ross has not proven an enforceable promise by the State, his claim for promissory estoppel fails.

### E. The Superior Court's Citation Of An Unpublished Memorandum Opinion Was Not Reversible Error.

Ross finally argues that the superior court's decision ought to be reversed because that court erroneously relied on an unpublished memorandum opinion of this court. But because we review the superior court's ruling using our independent judgment,[35] such reliance would be of no consequence.

### F. Because Ross Is Not Eligible To Receive A Dividend, His Children Are Not Eligible.

Under 15 AAC 23.113(b),

[a] child who otherwise qualifies is eligible to receive a dividend if the child is ... in the lawful and physical custody of a sponsor who is eligible for a dividend, would have been eligible for a dividend had the sponsor filed timely, was only ineligible due to AS 43.23.005(d) [ineligibility due to conviction or incarceration], or forfeited dividends under AS 43.23.035(a) or (c) [ineligibility due to fraud or aiding an ineligible collection of a dividend].

Because Ross is not eligible for a dividend, his sponsored children are not eligible for dividends.

## V. CONCLUSION

As the administrative law judge in Ross's agency appeal noted, "Ross raises questions about the means selected by the legislature to determine who should remain eligible to receive a PFD." And as we have observed in the past, "[i]t is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people."[36] Our role in this case is to determine only whether the policy chosen by the legislature complies with the Alaska and federal constitutions. For the foregoing reasons, we conclude that it does, and we therefore AFFIRM the superior court.

**33.** *Id.* at 440 (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985)).

**34.** *Id.* at 442 (quoting *Brady v. State*, 965 P.2d 1, 10 & n. 20 (Alaska 1998)); *James v. State*, 815 P.2d 352, 357 (Alaska 1991) (quoting *Zeman*, 699 P.2d at 1284).

**35.** *See Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011).

**36.** *Benavides v. State*, 151 P.3d 332, 336 (Alaska 2006) (internal quotation omitted).