**John and Helen BRODIGAN, Appellants,**

v.

**ALASKA DEPARTMENT OF REVENUE, Appellee.**

No. S–6193.

Supreme Court of Alaska.

July 28, 1995.

Mark Rindner and Diane L. Wendlandt, Lane Powell Spears Lubersky, Anchorage, for appellants.

Marilyn May, Asst. Atty. Gen., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

EASTAUGH, Justice.

### I. *INTRODUCTION*

John and Helen Brodigan appeal the decision of the Department of Revenue, Permanent Fund Dividend Division (Department) finding that the Brodigans were ineligible for the 1990 permanent fund dividend (PFD). They argue that John qualified for an allowable absence for medical treatment, and thus they should have received their PFDs. We affirm the Department's finding that the Brodigans were ineligible in 1990.

### II. *FACTS AND PROCEEDINGS*

The Brodigans moved to Alaska in 1962.[1] John underwent two coronary bypass operations and other vascular surgery in 1971, 1986, and 1987. He visits physicians in Alaska for these problems annually and claims that because of his vascular problems, his physicians advised him to spend the coldest winter months in a warmer climate.

Since 1987, the Brodigans have lived in a motor home, which is registered in Alaska. When in Alaska, they live in their motor home at their son's house in Palmer, Alaska. They travel in the Lower Forty–Eight during the colder months. The Brodigans were outside Alaska from November 4, 1987, to May 9, 1988, from September 1, 1988, to April 29, 1989, and from September 17, 1989, to May 2, 1990.

---

1. The Brodigans' permanent mailing address is Palmer, Alaska, and they have no other address. The Brodigans' children and grandchildren reside in Alaska. The Brodigans have been counted as Alaska residents in three censuses. They are registered to vote in Alaska and have never voted in another state. They have Alaska driver's licenses and own several vehicles, boats, and trailers, all of which are registered in Alaska. Their dog is also registered in Alaska. John belongs to the Veterans of Foreign Wars and the American Legion in Alaska. The Brodigans also have credit union accounts in the Mat–Su Valley.

The Brodigans applied for the 1989 and 1990 PFDs. They initially received their 1989 PFDs; however, the Department demanded repayment, asserting that the Brodigans were not Alaska residents for PFD eligibility because they were outside Alaska for extended periods of time which were not allowable absences. The Department also denied the Brodigans their 1990 PFDs.[2]

In November 1990 and May 1991, the Brodigans requested an informal conference regarding the denial of the 1989 and 1990 PFDs, respectively. In August 1991 the Department tentatively rejected the Brodigans' arguments and upheld the denial of the 1989 PFDs based on ineligibility. The Brodigans refuted the denial, noting their ties to Alaska. They also noted that "[t]he above argument will also hold true for our 1990 application for the permanent fund checks."

The Department upheld its finding of ineligibility in an informal conference decision in October 1991. The Brodigans appealed the decision and requested a formal hearing for the 1989 and 1990 years. A hearing officer conducted a telephonic hearing in February 1992 regarding the 1989 and 1990 PFDs. The Department later informed the hearing officer that the hearing should have concerned only the 1989 PFDs because the Brodigans did not appeal the denial of the 1990 PFDs to the informal conference level.

In May 1992 the hearing officer decided that the Brodigans were not eligible for the 1989 PFDs, concluding that they had not demonstrated an intent to return to Alaska and remain permanently. After the Brodigans appealed to the superior court, the Department informed the Brodigans that it would not seek repayment of the 1989 PFDs because the Department's policy did not require repayment of erroneously-issued PFDs. The parties stipulated that the Brodigans' appeal of the 1989 denial would be dropped, and that the appeal of the 1990 denial could proceed on the record established in the appeal of the 1989 denial.

After oral argument, the superior court affirmed the Department's denial of the 1990 PFDs and awarded the Department $700 in attorney's fees.

This appeal followed.

## III. DISCUSSION

To qualify for a PFD in 1990, an applicant needed to meet three statutory requirements. The applicant had to be (1) a state resident[3] on the application date; (2) a state resident for at least twenty-four months immediately preceding April 1 of the current dividend year; and (3) physically present in the state at some time during the period beginning July 1 two years before the date of application and ending on the date of application. AS 43.23.005(a) (1990). The applicable regulation required that an applicant who left Alaska must have been a resident of Alaska for a minimum of six months immediately before departing Alaska, be absent for one or more of the allowable reasons, and demonstrate at all times during the absence an intent to return to and remain permanently in Alaska. 15 Alaska Administrative Code (AAC) 23.175(a) (1990). Alaska Statute 43.23.095(8) allows absences "only for any of the following reasons: ... (D) medical treatment"; 15 AAC 23.175(c) (1990) allows an applicant to be "absent primarily for one of the following reasons: ... (6) receiving medical treatment if the treatment is on the advice of an Alaska-licensed physician and does not include a seasonal or permanent change of residence." Additionally, the Department has the discretion to allow an absence for any purpose not expressly listed "if the nature and duration of the absence are temporary and are consistent with an intent

---

2. The Brodigans' 1990 PFD applications stated the dates they were absent from Alaska and, under "Reasons for Absences," John checked both "Vacation" and "Other," noting under "Other:" "For theripeutic [sic] treatment of vasquilar [sic] system." Helen checked both "Vacation" and "Out of state as the spouse or dependent of an Alaska resident with an allowable absence."

3. A "state resident" is "an individual who is physically present in the state with the intent to remain permanently in the state or, if the individual is not physically present in the state, intends to return to the state and is absent for" a reason allowable by statute or regulation. AS 43.23.095(8) (1990).

to return to Alaska and remain permanently in the state." 15 AAC 23.175(d) (1990).

### A. *Allowable Absence for Medical Treatment*

■ The Department considered the Brodigans' extended absences to have been for reasons not allowed for purposes of PFD eligibility. It noted that a seasonal change of residency for medical purposes does not qualify as an absence allowable for medical treatment under 15 AAC 23.175(c)(6).[4] Thus, it held that the Brodigans were ineligible to apply for the 1990 PFD.[5]

The Brodigans argue that they should have received their 1990 PFDs because John was absent for medical treatment, a permissible reason under AS 43.23.095(8)(D) and 15 AAC 23.175(c)(6).[6] They claim that as a result of John's vascular problems, his doctor in Alaska recommended that he spend the colder months in a warmer climate outside Alaska and thus their travel constitutes "medical treatment."

In affirming the Department's decision, the superior court stated that "medical treatment," as used in AS 43.23.095(8)(D), is not defined to include merely an absence from the state on the advice of one's doctor.

"Treatment means just that. It implies some specific therapeutic application by medical personnel...."

We find the court's interpretation reasonable. Allowing an absence for medical treatment recognizes that prolonged absence from Alaska can be appropriate when some "specific therapeutic application by medical personnel" is necessary. Leaving Alaska for that purpose does not reflect adversely upon one's intent to remain permanently in Alaska upon completion of treatment.

We conclude that it was reasonable for the Department to decide that the Brodigans did not qualify for an allowable absence for "medical treatment," although their absence may have been medically advised. The Department consequently did not abuse its discretion.[7]

### B. *15 AAC 23.175(c)(6)*

■ The Brodigans argue that even if this court agrees with the Department's interpretation of "medical treatment," 15 AAC 23.175(c)(6) is invalid because it exceeds the Department's statutory authority. They assert that AS 43.23.095(8) allows the Department to establish additional allowable ab-

---

**4.** We review the Department's interpretation of 15 AAC 23.175 under the reasonable basis standard. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). "[W]here an agency interprets its own regulation ... a deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue." *Id.* (quoting *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982)).

**5.** As stated previously, the parties stipulated that the appeal of the 1989 denial would be dropped, and that the appeal of the 1990 denial could proceed on the record established in the appeal of the 1989 denial. Thus, the hearing officer's decision denying the 1989 PFDs is relevant to the 1990 appeal.

**6.** John argues that he should have qualified for an allowable absence for medical treatment. Helen argues that she should have qualified for an allowable absence because she was "accompanying an eligible applicant as a spouse." 15 AAC 23.175(c)(13) (1990). Consequently, Helen has no independent basis to claim an allowable absence.

**7.** Even if the Brodigans' travel outside Alaska was for the purpose of receiving "medical treatment," their absence was not allowable because it was a "seasonal change of residence." *See* 15 AAC 23.175(c)(6) (prohibiting absences for medical treatment if the treatment includes a "seasonal or permanent change of residence").

The Department found that the Brodigans were outside Alaska from September 17, 1989, to May 2, 1990, for a total of 227 days or nearly two-thirds of the year-long eligibility period. The record also demonstrates that the Brodigans were outside Alaska for similar periods for the previous two PFD eligibility periods—from September 4, 1987, to May 9, 1988 and from September 1, 1988, to April 29, 1989. Consequently, the Department found that "[t]he pattern demonstrates that they are only temporarily in Alaska each year, for the warmer months, and no longer have the intent to remain permanently in the state. While they have the intent to return every year, they plan only to be here temporarily, not permanently." Therefore, the Department correctly concluded that the Brodigans did not qualify for an allowable absence for medical treatment, and did not err in stating that "[s]easonal changes of residency for medical purposes do not qualify for the absence for medical treatment."

sences. They claim, however, that 15 AAC 23.175(c) impermissibly limits the statutory allowable absences by excluding certain types of medical treatment (those involving seasonal travel) from the statutory definition of allowable medical absences.

In deciding whether 15 AAC 23.42.175(c)(6), which denies PFD eligibility to applicants who have a seasonal change of residence, falls within the commissioner's delegated authority to regulate PFD eligibility[8] we consider whether the regulation is consistent with the statutory purpose and is "reasonable and not arbitrary."[9] *State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 624 (Alaska 1993) (quoting *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971)).

Alaska Statute 43.23.095(8) allows residents who temporarily leave the state for limited purposes to retain their PFD eligibility. Subsection (D) allows absences for medical treatment. Because the Department must administer the PFD program and apply the statutory standard, the commissioner needed to decide the meaning of "medical treatment."[10] Thus, 15 AAC 23.175(c)(6) explains that an absence may be allowed for applicants receiving medical treatment if the absence "does not include a seasonal or permanent change of residence."

"One objective of [AS 43.23.015(a), which grants the commissioner authority to adopt regulations] is to require the commissioner to make substantive regulations resolving questions as to who is and who is not a permanent resident." *Cosio,* 858 P.2d at 625. We stated in *Cosio* that "[t]he objective of AS 42.23.095(8) is to limit payment of dividends to permanent residents." *Id.* Those who leave Alaska from the fall through the spring may reasonably be seen to fall outside this category of permanent residents of Alaska. By excluding medical absences involving a seasonal or permanent change of residence, the regulation assures that eligibility is limit-

ed to those residents who are temporarily outside actively attempting to treat their medical conditions. The regulation is consistent with the language and purposes of the statute. The regulation also eases the administrative burden of attempting to determine what treatment level is sufficient to merit eligibility for a PFD.

Under the Brodigans' interpretation of the statute, any person whose physician advises that another climate would be beneficial could qualify for a PFD simply by visiting Alaska every year and establishing paper connections to Alaska, via licenses, registrations, and the like. To protect against such claims, the Department must be able to reasonably define statutory terms to insure that the permanent fund is protected for the legitimate claims of permanent residents. *See State, Dep't of Revenue v. Bradley,* 896 P.2d 237, 240 (1995) ("The purpose of the regulation [conditioning student status upon full-time attendance] is to avoid unwarranted dividend payments without unduly burdening the agency."). Although the regulation is more restrictive than the statute because it contains the seasonal change language, it is not inconsistent with the statute. *See Bradley,* at 240 (upholding a regulation which required an absent resident to be enrolled as a "full-time student" although the relevant statute used broader language of "secondary or postsecondary education" to define state resident); *Cosio,* 858 P.2d at 624–25 (upholding a regulation which denied PFD eligibility to illegal aliens although the relevant statutes did not mention aliens at all). Because the regulation is consistent with the statutory purpose and is reasonable, we hold that the Department did not exceed its authority in adopting 15 AAC 23.175(c)(6).

### C. *Discretionary Allowable Absence*

■ The Department found that the Brodigans were not absent for any of the rea-

---

**8.** In *State, Dep't of Revenue v. Cosio,* 858 P.2d 621, 624 (Alaska 1993), we concluded that "section .015(a) requires the commissioner to adopt regulations setting substantive eligibility requirements for permanent fund dividends."

**9.** We accord the administrative regulation a presumption of validity; the party challenging the regulation bears the burden of demonstrating

invalidity. *Cosio,* 858 P.2d at 624. We review a "legislative" type of regulation with considerable deference. *Id.*

**10.** AS 43.23.095(8)(F) states that the commissioner may establish by regulation other reasons for allowable absences.

sons specifically allowed in AS 43.23.095 and 15 AAC 23.150 (1989).[11] Therefore, it considered whether the Brodigans satisfied 15 AAC 23.175(d), which grants the Department discretion to approve absences for other purposes. The Department concluded that "[t]he pattern demonstrates that they are only temporarily in Alaska each year, for the warmer months, and no longer have the intent to remain permanently in the state. While they have the intent to return every year, they plan only to be here temporarily, not permanently." Thus, the Department did not find the Brodigans' absence allowable.

The Brodigans argue that the Department should have found their absence allowable under 15 AAC 23.175(d). The Brodigans assert that the Department's determination of their intent is not supported by substantial evidence because the Department failed to consider the totality of the circumstances which demonstrate their intent to remain Alaska residents. They claim that they have not established a residence outside Alaska and have ties to Alaska, and that therefore the presumption that absences should be shorter than the time spent in Alaska, employed in *State, Department of Revenue v. Gazaway*, 793 P.2d 1025 (Alaska 1990), should not apply.

In *Gazaway*, the PFD applicants were children who had resided in Alaska before their parents' divorce. 793 P.2d at 1026.

Under the custody agreement, the children lived in Oklahoma with their mother, but spent their summer vacations and alternating Christmas and spring vacations with their father in Alaska. *Id.* The Department denied the children PFDs, claiming that their absence from Alaska was not allowable under a predecessor regulation that was nearly identical to 15 AAC 23.175(d). *Id.* at 1027. The Department "interpreted its regulation permitting absences from Alaska that are temporary in nature and duration to include only absences that are not longer in duration than the time spent in Alaska." *Id.* The Department found that "[t]he children were in Alaska for less than a third of the years in question. Their absences from the state were regular and of longer duration than their presence in the state. In effect, the children were temporarily present in Alaska, not temporarily absent." *Id.* We held that the Department's interpretation of its regulation was reasonable. *Id.*

Similarly, the Brodigans left Alaska for the majority of the year for three consecutive years. Their absences were "regular and of longer duration than their presence in the state." In 1990 they can be considered to have been "temporarily present in Alaska, not temporarily absent." The Department did not abuse its discretion in finding that the Brodigans' absence was not temporary, and thus not allowable under 15 AAC 23.175(d).[12]

---

11. In 1989 the regulation regarding allowable absences was found under 15 AAC 23.150. Subsection (d) stated:

> In the department's discretion, an absence under this section may be disallowed, depending on the length of the absence, frequency and duration of that absence, and other factors relevant to the length and purpose of the absence in question.

In 1990, however, the regulation was renumbered as 15 AAC 23.175 and slightly altered.

> 15 AAC 23.175(d) states in relevant part:
> An absence for any purpose other than one stated in (c) of this section will, in the department's discretion, be allowed by the department if the nature and duration of the absence are temporary and are consistent with an intent to return to Alaska and remain permanently in the state.

The 1990 regulation, 15 AAC 23.175, controls here.

12. The Brodigans unpersuasively argue that the Department cannot determine their intent solely on the length of their absence from Alaska because it must consider the totality of the circumstances pursuant to 15 AAC 23.130(d). In its 1990 denial, the Department considered other circumstances—"the duration, length, frequency and purpose of the absence in question." The Department considered the Brodigans' absence to be a vacation, noting that over the past three years, they established a pattern of frequent, recurring, and lengthy absences.

Equally unpersuasive is their argument that they travel in a motor home during their absences and did not establish a permanent residence outside Alaska. They fail to acknowledge that the residency requirement for PFD eligibility may differ from other residency requirements. The Department's decision states:

> This case is an example of the different definitions of residency in the Alaska statutes. Though the applicants are not eligible to re-

### D. *Due Process*

■ The Brodigans argue that the Department denied them substantive due process by imposing "an irrebuttable presumption of nonresidence based on six months' absence for other than a specifically listed reason." They claim that the presumption implicates their fundamental right to travel because it penalizes them for traveling outside the state and fails to survive strict scrutiny.

The Brodigans mischaracterize the presumption as irrebuttable. The Department stated that an absence "that exceeds over half of each year is presumed to be unallowable because it is not temporary." The Department's notice denying the 1990 PFDs demonstrates that the Department considered the Brodigans' evidence: "Over the past 3 years you have established a pattern of frequent, recurring, and lengthy absences. You can not claim that you intend to return to Alaska and remain permanently. You are not eligible for a 1990 [PFD] and your application is denied." The Department considered that the Brodigans' absence was part of a pattern and that they did not produce evidence demonstrating that the pattern would change. Thus, it is more accurate to state that the Brodigans failed to rebut the presumption than to consider the presumption unrebuttable. The Department's use of the six month presumption did not deny the Brodigans due process.[13]

### E. *Attorney's Fees*

■ The superior court awarded the Department attorney's fees of $700, approximately twenty percent of the fees it actually incurred. The superior court's order awarding attorney's fees states:

The court finds that Appellants are *not* public interest litigants, *cf.*, *Rosen v. St. Bd. of Accountancy*, 689 P.2d 478 [ (Alaska 1984) ], but that the economic incentive to pursue such claim is small and that award of a large percentage of actual attorney fees could deter good faith litigants of limited means from pursuing their claims.

The Brodigans argue that the superior court should have denied the Department's motion for attorney's fees under Appellate Rule 508 because it is unclear whether the Department is a prevailing party, and because they are public interest litigants.

■ A superior court acting as an intermediate court of appeal from the decision of an administrative agency has broad discretion to award attorney's fees under Appellate

---

ceive Alaska Permanent Fund Dividends for 1989, that does not mean that they are not considered residents for other purposes. Eligibility for PFDs includes meeting a definition of residency tied to physical contact to the state, which may be more difficult to meet than the definition of residency for other purposes. Regardless of whether the Brodigans live in a motor home or in a house with a street address, they reside outside Alaska for the majority of the year on a seasonal basis. The fact they move their home with them from place to place outside Alaska and do not establish an outside residence does not prove they must be Alaska residents.

13. The Brodigans also argue that 15 AAC 23.175(c)(6) violates equal protection because it "distinguishes between two distinct classes of Alaska residents: those whose medical treatment involves seasonal absences from the state and those whose medical treatment does not require such absences." They contend that because they are members of the first class, the regulation impinges on their right to travel, requiring a higher degree of scrutiny in the equal protection analysis than that accorded in a PFD, an economic interest.

The Brodigans' conclusion that the right to travel requires a higher degree of scrutiny than that given to a PFD is not necessarily correct. This court has stated that in the "right to migrate context"

[W]e will no longer regard all durational residency requirements as automatically triggering strict scrutiny and requiring a showing that such a classification is absolutely necessary to promote a compelling state interest. Instead, we will balance the nature and extent of the infringement on this right caused by the classification against the state's purpose in enacting the statute and the fairness and substantiality of the relationship between that purpose and the classification.

*Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 271 n. 10 (Alaska 1984) (quoting *Williams v. Zobel*, 619 P.2d 448, 453 (Alaska 1980), *rev'd on other grounds*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982)). Applying this standard, however, it is clear that the State's purpose in awarding PFDs only to permanent residents outweighs the minor infringement on the Brodigans' choice of seasonal residences.

Rule 508.[14] *Messerli v. Dep't of Natural Resources,* 768 P.2d 1112, 1122 (Alaska 1989); Alaska R.App.P. 508(e). The Brodigans' arguments do not convince us that the superior court abused its discretion in awarding fees to the State.[15]

## IV. CONCLUSION

We AFFIRM the Department's decision that the Brodigans were ineligible to receive the 1990 PFDs, and AFFIRM the superior court's attorney's fees award to the Department.

14. Appellate Rule 508 states in relevant part:

**Attorney's Fees.** Attorney's fees may be allowed in an amount to be determined by the court. If such an allowance is made, the clerk shall issue an appropriate order awarding fees at the same time that an opinion or order under Rule 214 is filed.

15. The Brodigans claim that because the Department agreed not to pursue any claim for repayment of the 1989 PFD, it was not the prevailing party regarding the 1989 PFD. They do not dispute that the Department prevailed regarding the 1990 PFD. Thus, they characterize the parties' status as a "tie." Such a characterization is misguided. First, the Department stipulated to drop the Brodigans' appeal of the 1989 denial, not because of the Brodigans' efforts, but due to the Department's policy under which assessments are not made when a PFD is erroneously issued. Moreover, the parties also stipulated that the facts of the 1990 dividend year were "substantively identical" to those for 1989. As previously mentioned, the Brodigans admit that they lost their claim for the 1990 PFD. Thus, if the Department had proceeded with the assessment for the 1989 PFD, it would presumably have succeeded on that year as well. Consequently, the superior court did not abuse its discretion in awarding the Department attorney's fees for the action.

Additionally, the Brodigans do not qualify as public interest litigants because they fail to satisfy the requisite four criteria. *See Anchorage Daily News v. Anchorage School Dist.,* 803 P.2d 402, 404 (Alaska 1990) (stating that under the fourth criterion, the "litigant [must] have a sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance").