Fred J. SCHIKORA, Appellant,

v.

STATE of Alaska, DEPARTMENT
OF REVENUE, Appellee.

No. S–8972.

Supreme Court of Alaska.

Aug. 25, 2000.

Michael A. MacDonald, Downes, Mac-Donald, & Levengood, P.C., Fairbanks, for Appellant.

Linda T. McKinney, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

Although Fred Schikora maintained his primary home in Alaska, work and leisure often took him outside Alaska. The Department of Revenue withheld his permanent fund dividends for 1992, 1993, and 1994 because the absences he reported exceeded those allowed under former AS 43.23.005(a), AS 43.23.095(8), and their implementing regulations. Schikora made timely appeals of those decisions, but a Senior Revenue Hearing Officer and the superior court upheld the department's decisions.

Schikora appeals. The crux of his argument is that allowable absence rules apply only to Alaskans who apply for a permanent fund dividend "absentee," i.e., from outside the state. Because we find that the superior court interpreted the permanent fund dividend statute correctly, we affirm.

### II. FACTS AND PROCEEDINGS

The Permanent Fund Dividend (PFD) program offers dividends to qualifying Alaska residents. At the times relevant to this appeal, PFD residency was defined by former AS 43.23.095(8) and by former 15 Alaska Administrative Code (AAC) 23.163. Specifically, the statutory definition of residency required physical presence in the state, but allowed exceptions for education, military service, and the like. By regulation, the department permitted absences for up to 180 days per year for any reason consistent with an intent to remain permanently in Alaska.[1]

---

1. *See* 15 AAC 23.163(c)(15)(A) (1993).

Fred Schikora claims to have lived in Alaska since 1945. While he had many ties to the state, he spent much of his time outside Alaska, particularly in Mexico and South America. His 1992 and 1993 dividend applications reported absences in excess of 180 days.[2] Nevertheless, he was in Alaska when he mailed those applications.[3] Because "business" and "vacation" are not allowed absences under former AS 43.23.095(8), the only absences he claimed that might not affect his PFD eligibility were medical absences claimed for the 1994 qualifying year.

### A. *Schikora's 1992 and 1993 Applications*

Schikora's applications for 1992 and 1993 dividends were denied by the department because Schikora was Outside for 196 days during the 1992 qualifying year and 212 days during the 1993 qualifying year. He appealed those denials, and was ultimately granted full, formal administrative hearings.

The revenue hearing officer considered and rejected Schikora's argument that, since he was a state resident for general purposes under AS 01.10.005, his PFD application should not be reviewed for allowable absences since he was present in Alaska on the day he applied. The hearing officer went on to review Schikora's history of absences for the 1992 and 1993 qualifying years:

> [I]t appears that the Applicant always intends to return to Alaska from his frequent trips, but he does not intend to remain permanently in the state. Instead, he intends to return to Alaska so that he may leave again. Although the vast majority of residents intend to leave the state for vacation or other reasons, on perhaps an annual basis, the cumulative 180–day rule is effective in distinguishing between those who are absent temporarily and those who are absent more often than not.

The hearing officer concluded that the vacation and business reasons for Schikora's trips were not allowable under former AS 43.23.005(a)(1993) or the applicable regulations and affirmed the denial of Schikora's dividend.[4]

### B. *1994 Allowable Absence Claim*

In his 1994 PFD application, Schikora reported 237 days of cumulative absence. Of these, he claimed that 178 were for continuous medical treatment. The department denied this application because Schikora failed to substantiate his claim of continuous treatment; his application indicated only a few consultations with various doctors. Schikora pursued his appeal rights and ultimately sought a formal hearing.

While that hearing was pending, the PFD Division moved for summary adjudication of the administrative proceeding. Its affidavit offered Schikora's applications as evidence that either (1) Schikora was outside Alaska for more than 180 days and could not prove a medical absence or (2) his absence in addition to the claimed medical absence exceeded the forty-five days allowed under former 15 AAC 23.163(c)(16)(C). In either case, the division claimed that denial was proper.

Schikora's affidavit in response to the summary adjudication motion mirrored his legal

---

**2.** Schikora reported these 1992 qualifying year absences:
>Feb. 27, 1991—May 14, 1991
>(75 days for business reasons)
>May 24, 1991—June 11, 1991
>(18 days for vacation)
>Aug. 18, 1991—Sep. 1, 1991
>(14 days for vacation)
>Nov. 1, 1991—Dec. 2, 1991
>(31 days for vacation)
>Jan. 2, 1992—Mar. 31, 1992
>(89 days for business reasons)
>For 1993, he reported these absences:
>Jan. 2, 1992—May 20, 1992
>(138 days for business)
>June 12, 1992—June 27, 1992
>(15 days for family visit)
>Oct. 12, 1992—Dec. 10, 1992

>(59 days for vacation)
>For 1994, he reported these absences:
>Jan. 1, 1993—June 3, 1993
>(153 days claimed medical)
>Aug. 2, 1993—Aug. 27, 1993
>(25 days claimed medical)
>Oct. 18, 1993—Dec. 16, 1993
>(57 days business/vacation)

**3.** Schikora applied on June 30, 1992, from Fairbanks; June 29, 1993, from Fairbanks; and Jan. 6, 1994, from Fairbanks.

**4.** There were statutory and regulatory changes between 1992 and 1993, but Schikora's arguments are based on statutory elements that did not change.

arguments and did not dispute the department's facts. On the basis of the parties' affidavits and memoranda, the hearing officer granted the PFD Division's motion for summary adjudication.

### C. The Appeal Before Judge Wood

The superior court heard Schikora's appeal of the administrative decisions. After briefing and oral arguments, Judge Wood affirmed the department rulings but applied a different interpretation of the PFD statute. Schikora now appeals the superior court's decision.

## III. DISCUSSION

### A. Standard of Review

■ In reviewing the decision of a superior court sitting as an intermediate court of appeal, we apply our independent judgment without deference to the superior court's decision.[5] The Department of Revenue hearing officer's final denial of Schikora's dividend was an administrative determination, which we review independently.[6] The facts of this case are, for the most part, undisputed. We apply the substantial evidence test to the few factual questions presented.[7]

---

**5.** See *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

**6.** See *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1127 (Alaska 1999) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)). We went on to explain:

> We apply the substitution of judgment standard to issues of law not involving agency expertise, such as statutory interpretation and constitutional claims. *See Madison v. Alaska Dep't of Fish and Game*, 696 P.2d 168, 173 (Alaska 1985). However, this court "will not substitute [its] judgment for that of the agency with respect to the efficacy of [a] regulation nor review the 'wisdom' of a particular regulation." *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 624 (Alaska 1993) (citing *Alaska Int'l Indus. v. Musarra*, 602 P.2d 1240, 1245 n. 9 (Alaska 1979)).

*Id.* (alteration in original).

**7.** This court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The [agency's] decision need not be the only possible solution to the problem, for it is not the function of the court to reweigh the evidence

### B. The AS 43.23.005 Residency Requirements

Former AS 43.23.005(a) set out the PFD eligibility requirements that govern this case.

> (a) An individual is eligible to receive one permanent fund dividend each year in an amount to be determined under AS 43.23.025 if
>
> > (1) the individual applies to the department;
> >
> > (2) on the date of application the individual is a state resident;
> >
> > (3) the individual was a state resident for at least the calendar year immediately preceding January 1 of the current dividend year;
> >
> > (4) the individual has been physically present in the state at some time during the prior two calendar years before the current dividend year; and
> >
> > (5) the individual is ... a citizen of the United States [or a qualified alien].

It is undisputed that Schikora met requirements one, four, and five. Thus, this case turns on whether he qualified as a "state resident" as that term applied to requirements two and three.

"State resident" is defined for general purposes at AS 01.10.055,[8] and again for divi-

---

or choose between competing inferences, but only to determine whether such evidence exists." *Bostic v. State, Dep't of Revenue, Child Support Enforcement Div.*, 968 P.2d 564, 567 (Alaska 1998) (quoting *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974) (alteration in *Bostic*)).

**8.** AS 01.10.055 reads:

> (a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
> (b) A person demonstrates the intent required under (a) of this section
> > (1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and
> > (2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.
> (c) A person who establishes residency in the state remains a resident during an absence

dend eligibility at former AS 43.23.095. As we recognized in *Brodigan v. State of Alaska, Department of Revenue,* "the residency requirement for PFD eligibility may differ from other residency requirements." [9] Under former AS 43.23.095(8) "state resident" for the purpose of dividend eligibility meant:

> an individual who is physically present in the state with the intent to remain permanently in the state under the requirements of AS 01.10.055 or, if the individual is not physically present in the state, intends to return to the state and remain permanently in the state under the requirements of AS 01.10.055, and is absent only for any of the following reasons:
>
> (A) vocational, professional, or other specific education for which a comparable program was not reasonably available in the state;
>
> (B) secondary or postsecondary education;
>
> (C) military service;
>
> (D) medical treatment;
>
> (E) service in Congress;
>
> (F) other reasons which the commissioner may establish by regulation; or
>
> (G) service in the Peace Corps.[10]

All of Schikora's 1992 and 1993 absences were for business or leisure, and therefore are not allowable absences. Likewise, Schikora's 1994 absences were disallowed for failure to substantiate his claimed medical absences. Furthermore, these absences in all three years exceeded the blanket allowance provided by regulation at former 15 AAC 23.163(c)(15)(A), which permitted absences for any reason "consistent with the individual's intent to remain a resident provided the

absence or cumulative absences do not exceed ... 180 days if the individual is not claiming any of the [other allowable absences]." [11] Schikora does not dispute that his reasons for being absent in 1992 and 1993 do not qualify as allowable absences under subparagraphs (A)-(G) of former AS 43.23.095(8) or its implementing regulations. Rather, he claims that he met AS 43.23.095(8)'s definition of "state resident" by being "physically present in the state with the intent to remain permanently in the state under the requirements of AS 01.10.055" on the date he applied for the disputed PFDs.

■ Schikora contends that, by being a state resident on his date of application, he satisfied former AS 43.23.005(a)(2), which makes an individual eligible for a PFD only if "on the date of application the individual is a state resident...." Although Schikora acknowledges that former AS 43.23.005(a)(3) further conditioned eligibility on an applicant's being "a state resident for at least the calendar year immediately preceding January 1 of the current dividend year," he reasons that he met this requirement because he had been an Alaska resident since 1945. Characterizing subparagraph (a)(3) as merely a "durational residency requirement for the issuing of the first dividend," Schikora insists that this provision did not literally require him to be present or excusably absent throughout the calendar year immediately preceding his application. Therefore, Schikora argues, the allowable absence provisions of former AS 43.23.095(8) are irrelevant to his case.

---

from the state unless during the absence the person establishes or claims residency in another state, territory or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state.

**9.** 900 P.2d 728, 733 n. 12 (Alaska 1995) (quoting the Department of Revenue's explanation that "[e]ligibility for PFDs includes meeting a definition of residency tied to physical contact to the state, which may be more difficult to meet than the definition of residency for other purposes").

**10.** Former AS 43.23.095(8). That statute also allowed the department to create additional al-

lowable absences by regulation. Under this authority, the department promulgated 15 AAC 23.175(d)(1992) and 15 AAC 23.163(c)(1993). Those catchall regulations allowed Alaskans who spent time Outside to receive a PFD if: (1) the reason for their absence was consistent with an intent to remain a resident, (2) they did not claim one of the specific allowable absences (e.g., military service, education), and (3) their cumulative absences in the qualifying year totaled no more than 180 days. This is often referred to as the 180–day rule.

**11.** Former 15 AAC 23.163(c)(15)(A).

But Schikora's reasoning is unpersuasive. As the superior court found, his argument underestimates AS 43.23.005's requirements:

> While it is true ... that the allowable absence provisions of AS 43.23.095(8) do not apply to an individual who is physically present in the state with the requisite intent on the date of application under AS 4[3].23.005(a)(2), the allowable absence provisions may apply to the same individual under paragraph (a)(3) of the same statute. The statute requires that, in order to qualify for a dividend, the individual must also be a state resident for at least the calendar year preceding the application period. Applying the definition of "state resident" to paragraph (a)(3) creates the requirement that the individual be physically present in the state with the requisite intent for the calendar year or absent from the state with the requisite intent for an allowable reason. Since Schikora was not physically present for the entire qualifying period for any of his PFD applications in question, then he must account for his absences to determine if those absences are allowable to maintain his eligibility for the annual dividend. This is true even if his residency was an established fact in previous years.[12]

As interpreted by the superior court, subparagraphs (a)(2) and (a)(3) work in tandem and serve complementary goals: by requiring an applicant to be a resident upon applying for the dividend, subparagraph (a)(2) addresses the issue of current residency, thereby ensuring individuals who are no longer current residents cannot apply for PFDs; and by also requiring the applicant to be a resident for the full calendar year immediately preceding the application, subparagraph (a)(3) addresses the issue of residency during the year for which the applicant asks to be paid, thereby ensuring that each year of payment reflects a full year of residency, that is, either actual presence within the state or allowable absence.

In our view, the superior court's reading of these provisions is sensible and correct.

Schikora offers no convincing argument against this reading. First, he argues that construing AS 43.23.005(a)(3) to require long-time residents to live continuously in the state for the year preceding each application would render AS 43.23.005(a)(4) redundant. Subparagraph (a)(4) requires an applicant to be "physically present in the state at some time during the prior two calendar years before the current dividend year[.]" Schikora reasons that there would be no need for this language if subparagraph (a)(3) required physical presence during the year preceding the dividend.

But Schikora's reasoning fails to acknowledge that under the allowable absences provisions of former AS 43.23.095(8) an applicant could be Outside for many years, yet still meet subparagraph (a)(3)'s prior-year continuous residency requirement. For example, a student who leaves the state to attend a four-year college could conceivably claim four years of continuous residency under subparagraph (a)(3) without ever returning to Alaska. Subparagraph (a)(4) deals with this possibility by ensuring that those who spend long periods outside the state on allowable absences maintain some physical contact with Alaska. Because this provision would continue to serve as a needed backstop controlling the abuse of long-term, allowable absences, the superior court's interpretation of subparagraph (a)(3) does not render subparagraph (a)(4) redundant.

■ Schikora's second argument is that the legislative history of the dividend program supports his interpretation of subparagraph (a)(3). On the contrary, the legislative history supports the department's position. The original PFD act [13] connected PFD eligibility to state residency during the six months that preceded the application.

> Sec. 43.23.005. ELIGIBILITY. (a) An individual is eligible to receive one permanent fund dividend each year [if] on the date of application the individual (1) is a state resident; and (2) *has been a state resident for a period of at least six consec-*

---

**12.** *Schikora v. State,* 4FA–96–2756 CI, Opinion at 10–11 (Alaska Super., January 14, 1999) (footnote omitted).

**13.** Ch. 102, SLA 1982.

*utive months immediately preceding the date of application.*[14]

This language conclusively demonstrates that the legislature intended to base PFD eligibility on recent history of residency rather than on residency in the remote past. Therefore, we find that the superior court correctly interpreted former AS 43.23.005 as it applied to Schikora.[15]

### C. *Schikora's Regulation Promulgation Argument*

Schikora next argues that, because of procedural errors in its promulgation, 15 AAC 23.163 was not properly adopted and must be invalidated. That regulation is the source of the 180–day rule, which allows Alaskans 180 days of absence from the state without jeopardizing their PFD eligibility.[16]

Assuming Schikora is correct and the department's regulations were improperly adopted, invalidating them would not help his case. The 180–day rule liberalizes the absences otherwise permitted under former AS 43.23.095(8). If we agreed with Schikora and suspended that rule, he still would not qualify for the disputed dividends because his absences were not among those allowed by statute. Therefore, because Schikora seeks a remedy that would not help his case, his regulatory arguments are moot.

### D. *Constitutional Claims*

We recently decided *Church v. State, Department of Revenue,*[17] a case that disposes of Schikora's first two constitutional claims. In *Church,* an Alaskan left the state for 274 days to care for a dying relative.[18] Like Schikora, Church claimed that the PFD rules denied him due process of law and denied him equal protection under the Fourteenth Amendment. As in *Church,* we find no merit

to those claims. Furthermore, Schikora's commerce clause argument has no merit.

### 1. *The PFD regulations do not deny Schikora due process of law.*

Schikora argues that "the regulations as applied seek to deny Schikora his residence status and therefore his PFD solely because he exercised his fundamental right to travel." We addressed this issue squarely in *Church.* There, we found that there was "no violation of Church's right to travel" caused by applying the PFD residency test.

> The infringement on Church's right to travel is relatively small and would not be likely to deter a person from traveling. An applicant has no vested property right in a permanent fund dividend and should not expect to receive a dividend if he doesn't meet the qualifications. Additionally, ... the regulations and statutes in question bear a fair and substantial relationship to the state's legitimate objective of efficiently awarding PFDs only to permanent residents.[19]

Schikora fails to distinguish or even consider *Church,* which we find to be exactly analogous to this case. Nothing in his recapitulation of due process principles rebuts the *Church* precedent. Schikora's due process rights were not denied.

### 2. *The PFD regulations do not deny Schikora equal protection.*

Schikora claims that the PFD regulations deny him equal protection. We review equal protection claims on a sliding scale, invoking closer scrutiny for more important interests.[20] In *Church,* we found that "PFDs represent an economic interest" and that "[e]qual protection claims concerning their denial are reviewed under minimum scrutiny."[21] Furthermore, we held that

---

14. *Id.* (emphasis added).

15. Because we uphold the superior court's interpretation, we need not consider Schikora's claim that the department's implementing regulations are inconsistent with Schikora's interpretation of the statute.

16. *See* 15 AAC 23.163(c)(15)(A).

17. 973 P.2d 1125 (Alaska 1999).

18. *See id.* at 1127.

19. *Id.* at 1131 (citations omitted).

20. *State v. Erickson,* 574 P.2d 1, 11–12 (Alaska 1978).

21. *Church,* 973 P.2d at 1130.

"even though an equal protection claim to a PFD involved the right to travel, it did not necessarily trigger heightened scrutiny." [22] Thus, the question in *Church* was whether the 180–day rule was "designed to achieve a legitimate governmental objective," and whether its means "bear a 'fair and substantial' relationship to the accomplishment of that objective." [23]

We concluded that the objective of the 180–day rule—"to ensure that only permanent residents receive dividends" [24]—is legitimate. Further, "allowing only enumerated excusable absences unless a person has been in the state more than half a year bears a fair and substantial relationship to ensuring that the dividend goes only to permanent residents." [25] Therefore, we affirmed the PFD denial in *Church*. Schikora offers no reason to distinguish his case from this direct precedent and we see none; the 180–day rule did not deny him equal protection.

3. *Schikora's commerce clause claim is misplaced.*

■■ Schikora's last constitutional argument is that the 180–day rule violates the interstate commerce clause. [26] Specifically, he argues that by conditioning his receipt of a PFD on 180 days of physical presence in Alaska, the PFD statute and its regulations "prohibit[ed] interstate travel and therefore commerce." Since the regulation of interstate commerce is Congress's sole purview under the commerce clause, Schikora argues that the denial of his PFD was beyond the state's power.

In *Pike v. Bruce Church, Inc.*, the United States Supreme Court described this general rule for determining the validity of state statutes that affect interstate commerce:

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [27]

Schikora does not claim, nor do we see, any way in which PFD residency requirements regulate interstate commerce directly. Thus, whatever effect the PFD statute may have on interstate commerce is incidental to the state's legitimate goal of issuing PFDs to bona fide Alaska residents only. Schikora's claims that the PFD eligibility regulations "prohibit" or "have a chilling effect" on interstate travel are entirely conclusory and unsubstantiated in the record. In contrast, the benefits of accurately distributing PFDs to bona fide residents are obvious and are supported by precedent. [28] Balancing the benefits of an accurate PFD regime against the unsubstantiated, incidental burdens on interstate commerce leads us to conclude that the state's scheme for granting PFDs on the basis of demonstrated residency must be upheld.

Furthermore, in *Carlson v. State, Commercial Fisheries Entry Commission,* we recognized the difference between financial burdens predicated on interstate commerce and those predicated on residency. [29] In *Carlson,* we upheld a commercial fishing license system that charged out-of-state fishers three times what locals were charged. In doing so, we refused to analyze the fee differential under the dormant commerce clause because the fees did not involve the flow of articles in commerce.

[T]he fee differentials at issue in this case are not predicated upon the movement of

22. *Id.* (citing *Brodigan v. Alaska, Dep't of Revenue,* 900 P.2d 728, 734 n. 13 (Alaska 1995)).

23. *Id.*

24. *Id.*

25. *Id.* at 1130–31.

26. U.S. Const. art. I, § 8.

27. 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

28. *See Church,* 973 P.2d at 1130 (holding that accurate distribution of PFDs is a legitimate state purpose supported by a statutory and regulatory scheme that bears a fair and substantial relationship to achieving that purpose).

29. 919 P.2d 1337 (Alaska 1996), *cert. denied,* 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997).

articles of commerce across state lines, but rather upon the residency status of those applying for permits. The Supreme Court has consistently analyzed statutes which purportedly classify on the basis of residency under the Privileges and Immunities or the Equal Protection Clauses.[30]

As in *Carlson*, the classification in the present case turns on residency rather than the flow of commerce across state lines. For these reasons, we find no violation of the commerce clause.

### E. *The Factual Findings*

■ Schikora's last points on appeal concern the factual basis for the hearing officer's decision to withhold the disputed PFDs. Schikora's arguments are based on his legal interpretation of how PFD residency is defined, an interpretation we have rejected. Under the residency definition at former AS 43.23.095(8), the hearing officer's decision should be upheld if there was substantial evidence to support a finding that Schikora was absent from the state for more than 180 days without a reason allowed by statute or regulation. Since Schikora does not dispute that his absences in 1992 and 1993 were for business and leisure—neither of which qualify as allowable absences—and since he does not dispute that those absences totaled more than 180 days, we find that there was substantial evidence in the record to support the denials.

■ Likewise, the facts concerning Schikora's 1994 dividend were not disputed. Schikora admitted to the length and nature

of the medical treatments he underwent in 1994. It was not disputed that his days in treatment totaled less than a week and that he spent 235 days outside Alaska. Thus, as a matter of law, the hearing officer could find that Schikora did not meet the definition of "state resident" in former AS 43.23.095(8). Summary judgment was appropriate.

### IV. *CONCLUSION*

The decision of the superior court is AFFIRMED.

---

30. *Id.* at 1340–41. Our decision in *Carlson* suggests that Schikora's claim could be considered under the Privileges and Immunities Clause. Schikora failed to brief such a claim, but even if he had, that approach would be unavailing. The PFD applicant's "burden" of being physically present in Alaska for more than 185 days per year is borne equally by all applicants, regardless of their recent previous state citizenship. *Cf. Saenz v. Roe*, 526 U.S. 489, 504–06, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (overturning California law that limited recent entrants to the state to the welfare benefits they could have received in the state they came from for one year). Moreover, as discussed in our due process and equal protection PFD decisions, (*see, e.g., Church*, 973 P.2d at 1129–32), the purpose of that "burden" is to fairly distinguish the residential intent of those who seek PFDs. Since

PFDs are cash payments, unrelated to any condition other than residency, they are the kind of "readily portable benefit" for which states may apply durational residency requirements to establish an applicant's "bona fide" intent to be a state resident. *See Saenz*, 526 U.S. at 504–05, 119 S.Ct. 1518. Similar situations are presented by residency requirements related to the receipt of in-state tuition benefits. "The State can establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, *bona fide* residents of the State, but have come there solely for educational purposes, cannot take advantage of the in-state rates." *Vlandis v. Kline*, 412 U.S. 441, 453–54, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (emphasis added). Alaska has a similar, legitimate interest in seeing that only permanent residents receive PFDs.