WINFREE, Justice,
with whom STOWERS, Justice, joins, dissenting in part.
I agree with the court's determination that Richard - Heller did not meet - AS 43.23.008(b)'s eligibility requirements for an allowable absence from Alaska in 2006.[1] But I disagree with the court's determination that AS 48.28.008(b) is a bona fide residency requirement and thus does not violate the United States Constitution. In my view AS 43.283.008(b) is an unconstitutional durational residency requirement, and I therefore would reverse the superior court's decision and order that Heller is qualified to receive a Permanent Fund Dividend (PFD) for 2007 (based on his 2006 qualifying year of residency)[2]
We must carefully distinguish between bona fide residency requirements, which treat residents differently from nonresidents, and durational residency - requirements, which treat new residents differently from established residents.[3] As the court correctly states today, "durational residency requirements are more susceptible to constitutional infirmity than laws that distinguish residents from nonresidents.[4] If a dura-tional residency requirement burdens the right to migrate,[5] under federal constitutional analysis the State of Alaska is required to show that the law is necessary to further a compelling state interest.[6]
The distinction between a bona fide resi-deney requirement and a durational residency requirement does not depend merely on the requirement's purpose. If it actually, purposely, or incidentally burdens the right *85 to migrate, a state residency requirement discriminating against citizens who have been residents for a relatively short period is a durational residency requirement subject to strict scrutiny.[7] The United States Supreme Court more recently has stated that because "the right to travel embraces the citizen's right to be treated equally in [a] new State of residence, the discriminatory classification is itself a penalty," regardless of actual or incidental deterrence to migration, and thus subject to strict serutiny review.[8]
It is against this backdrop that AS 43.28.008(b) must be considered. I start with the unremarkable proposition laid out by the court that the legislature may define "resident" differently for PFD eligibility than for other purposes.[9] I then look to see how the legislature actually defined "resident" for PFD eligibility when Heller applied for a 2007 PFD. Prior to statutory amendments in 1998, the list of legislatively approved absences was incorporated in the definition of "resident" [10] and, as the court notes, that definition had passed constitutional muster.[11] But, as the court also notes, the legislature changed that framework by creating an "allowable absence" provision separate and apart from the definition of "resident.[12]
The court finds it "significant that the substance of the amended statute mirrored the substance of the earlier statute and regulations." [13] And the court makes much of Heller's purported "acknowledgment" that the statutory changes were "only ... 'technical changes'"[14] But the relevant portion of Heller's brief from which the court makes this point was Heller's argument that the statutory change "made compliance with the new allowable absence statute (AS 48.23.008) a separate eligibility requirement from that of residency." Heller argued that this change was intentional and for a specific purpose, quoting a Department of Law representative during a 1998 legislative hearing, as follows:
The bill also makes a number of technical changes all of which we support. It moves the allowable absences provisions out of the definition and into the body of the legislation, which allows us to tell people, even though you're a missionary and out of state and believe that you're an Alaskan, we don't have to tell them they're not a resident. What we can tell them, if this legislation goes through, is that, even though they may really be a resident, they don't qualify for a dividend, because they're just not on the list.[15]
I do not read from Heller's briefing any kind of concession that the change was technical and not substantive, nor would such a concession mean much with respect to a question of law. In my view the change was very substantive: the Department of Revenue wanted to change the definition of resi-deney so it would not have to deny PFD *86 applications based on lack of residency, and it proposed doing so by removing allowable absence considerations from the residency definition. The court, not Heller, posits that the change in definition of "resident" really was not a substantive change, and that the allowable absence framework really continued to be part of the PFD residency definition.
After the statutory change, for the entire statutory chapter regarding PFDs (AS 438.28), "resident" means:
an individual who is physically present in the state with the intent to remain indefinitely in the state under the requirements of AS 01.10.055 or, if the individual is not physically present in the state, intends to return to the state and remain indefinitely in the state under the requirements of AS 01.10.055.[16]
Alaska Statute 01.10.055 provides the additional residency requirements that the person "make a home in the state" and demonstrate an intent to remain indefinitely "by maintaining a principal place of abode in the state for at least 80 days" and "providing other proof of intent as may be required by law or regulation."[17] The Department's relevant regulations require "establishment and maintenance of customary ties indicative of Alaska residency and the absence of those ties elsewhere." [18]
The court concedes "there is no dispute about Heller's intent to remain in Alaska or whether he satisfied) the preliminary requirement of AS 01.10.055."[19] The court instead finds a dispute concerning "Heller's qualifications under the PFD statute" [20]-but that dispute has nothing to do with residency qualifications, it has to do with residents' qualifications for allowable absences. The residency requirement for PFD purposes is set out in AS 48.23.095(7), and that requirement is that the individual be "physically present in the state with the intent to remain indefinitely in the state under the requirements of AS 01.10.055"; there can be no dispute that Heller was physically present in the state with the intent to remain indefinitely under the requirements of AS 01.10.055. In short, Heller was an Alaska resident when he was deployed to Iraq in 2005 and he was an Alaska resident in the qualifying year 2006.
Having concluded that Heller was an Alaska resident when he was deployed to Iraq, I now look at the "allowable absences" provisions that were intentionally severed from the PFD residency definition in 1998. Alaska Statute 48.23.008(a)(8) established an allowable absence for a person "serving on active duty as a member of the armed forces of the United States." There is no dispute that Heller fit this description in 2005-2006.
But under AS 48.23.008(b), a PFD applicant could not claim an allowable absence "unless the individual was a resident of the state for at least six consecutive months immediately before leaving the state.[21] The court's remarkable determination that here the word "resident" is ambiguous and its interpretation that "a resident of the state for at least six consecutive months" really means "physically reside in the state for at least six consecutive months" comes from thin air.[22] The Department makes no argument for ambiguity or the need for interpretation-as the court notes, the Department argues that although Heller was an Alaska resident, he was not an Alaska resident for the six months required by AS 43.23.008(b).[23] And the Department's implementing regulation takes a distinctly contrary view from that of the court. The regulation first states that "an individual who has never been physically present in Alaska may not claim an *87 allowable absence under AS 48.23.008."[24] It then states that the predicate requirement for an allowable absence is that the person be "a state resident for at least 180 days immediately before departure from Alaska." [25]
Nothing in the statute or the regulation suggests that physical presence for six consecutive months before departure from Alaska is a requirement for an allowable absence. The requirement is residency for six consecutive months before departure from Alaska.[26] A consecutive six-month physical presence requirement for an allowable absence, which necessarily implies continuous physical presence, will come as a great surprise to the many high school graduates who take an out-of-state spring break or summer vacation before departing for a college outside Alaska.[27] Under the court's analysis these students would be ineligible for a statutorily allowable absence, as would a person who went back and forth to Seattle for medical treatment and then later stayed in Seattle for an extended period of time receiving treatment.[28] Even a cursory look at AS 43.23.008(a)'s allowable absences reveals that outside the context of Heller's cireumstances, the court's interpretation of AS 48.23.008(b) as requiring a consecutive six-month physical presence in Alaska to support an allowable absence is patently unworkable.[29]
The court's response to this observation demonstrates the fallacy of its position-the court disavows a "continous" consecutive six-month physical presence requirement by stating that "the concept of residency does not preclude temporary absences as long as the intent to remain continues." [30] I agree completely-that is why the statute's consecutive six-month residency requirement focuses on statutorily defined residency and not on physical presence. In effect, the court has come full cirele back to the inescapable conclusion that "resident" in AS 48.28.008(b) means "resident" as defined by AS 43.23.095(7) and AS 01.10.055, and does not mean "physically present."
In my view AS 48.23.008(b) treats new residents-those who have been Alaska residents for less than six months-differently from established residents; it is not a bona fide residency requirement. Under the statutory framework instituted by the legislature in 1998, the combination of AS 48.23.095(7) and AS 01.10.055-not AS 43.23.008(b)-dis-tinguishes bong fide residents from passers-through. Upon establishing a principal abode in the state, displaying an intent to remain a resident indefinitely, and establishing customary ties to the state, a person becomes a bona fide resident and must be «treated as other residents under AS 48.28. But AS 48.23.008(b) provides that an allowable absence may not be claimed unless a *88 person "was a resident of the state for at least six consecutive months immediately before leaving the state"[31] this is "not simply a waiting period after arrival in the State; it is a waiting period after residence is established." [32] Consequently, AS 48.23.008(b) is a durational residency requirement-not a bona fide residency requirement-regardless of its purpose.
Under strict scrutiny review, the suspect provision must be necessary to further a compelling state interest, Moreover, the suspect provision must be drawn with precision and must be narrowly tailored to serve legitimate objectives.[33] The objective of AS 43.23.008(b) is to help ensure that only permanent, bona fide residents of Alaska receive PFDs-certainly a legitimate state interest.[34] But even if the interest were compelling, the statute's six-month residency requirement creates a classification crudely excluding both nonresidents (or passers-through) and bona fide residents alike, and such a "classification is all too imprecise." [35] It would not be unduly burdensome for the Department to determine on an individualized basis whether an applicant relying on an allowable absence provision is in fact a bona fide resident; the Department already requires the establishment of an abode and provides a list of other objective indicia of an intent to remain indefinitely, including tax, school, voter registration, and motor vehicle registration records.[36] Because it creates an overbroad classification by conclusive presumption, rather than by the precision and tailoring required under law, I conclude that AS 48.28.008(b) violates the United States Constitution.

. As the court notes at Op. 73, n. 10, in 2008 the legislature amended AS 43.23.008. See Ch. 36, §§ 1-2, SLA 2008. Although not substantively relevant to this case, the amendments caused the subsections to be numbered differently. Because this dispute arose under the 2007 statute, I, like the court, follow the numbering existing prior to the 2008 amendment.

. Because I conclude that the statute violates the United States Constitution, I do not address whether it also violates the Alaska Constitution.

. Attorney Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 903 n. 3, 106 S.Ct. 2317, 90 LEd.2d 899 (1986) ("We have always carefully distinguished between bona fide residence requirements, which seek to differentiate between residents and nonresidents, and residence requirements, such as durational, fixed date, and fixed point residence requirements, which treat established residents differently based on the time they migrated into the State.").

. Op. at 78. Compare Soto-Lopez, 476 U.S. at 904-05 & n. 4, 106 S.Ct. 2317 (stating durational residency requirement burdening right to migrate is subject to strict scrutiny), with Martinez v. Bynum, 461 U.S. 321, 328 n. 7, 103 S.Ct. 1838, 75 LEd.2d 879 (1983) ("A bona fide residence requirement implicates no 'suspect' classification, and therefore is not subject to strict seruti-ny.").

. The right to travel, or "the right of free interstate migration," is "a basic right under the Constitution" and "includes the freedom to enter and abide in any State in the Union." Soto-Lopez, 476 U.S. at 901-02, 106 S.Ct. 2317 (quoting Dunn v. Blumstein, 405 U.S. 330, 338, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)) (internal quotation marks omitted); see also Laurence H. Tribe, Saenz Sans Prophecy: Does the Privileges or Immunities Revival Portend the Future-or Reveal the Structure of the Present?, 113 Harv. L. Rev 110, 149-50 (1999):
[The [right to travel] cases appear to stand for a principle according to which those benefits of living in a given state that are constitutive of state citizenship and that may accordingly be restricted to the state's own citizens may not be still further restricted so that some citizens, based solely on the duration or pedigree of their citizenship, are in effect treated as "more equal than others."

. Soto-Lopez, 476 U.S. at 904-05 & n. 4, 106 S.Ct. 2317.

. See id. at 903, 106 S.Ct. 2317 (stating Supreme Court's cases have "principally involved" indirect burdening of right to migrate, but "[al state law implicates the right to travel when" it actually, purposely, or indirectly deters such travel); State v. Adams, 522 P.2d 1125, 1131 (Alaska 1974) ("In our view, the nature of the benefit withheld by the state is relevant only to judging the relative importance of the competing state interest, not to determining the applicable standard of judicial review.").

. Saenz v. Roe, 526 U.S. 489, 504-05, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).

. Op. at 75, n. 19 (quoting Schikora v. State, Dep't of Revenue, 7 P.3d 938, 942 (Alaska 2000) (" [The residency requirement for PFD eligibility may differ from other residency requirements.'") (quoting Brodigan v. Alaska Dep't of Revenue, 900 P.2d 728, 733 n. 12 (Alaska 1995))).

. See former AS 43.23.095(8) (1997).

. Op. at 80; see also Church v. State, Dep't of Revenue, 973 P.2d 1125, 1131 (Alaska 1999) ("[The PFD regulations and statutes in question are bona fide requirements which ensure that benefits 'provided for residents are enjoyed only by residents," and as such do not violate the constitutional right of interstate travel." (quoting Soto-Loper, 476 U.S. at 904 n. 3, 106 S.Ct. 2317)).

. Op. at 80-81 (citing ch. 44, §§ 5, 7, SLA 1998).

. Op. at 81.

. Op. at 81.

. Heller attributed this statement as follows: Tape of hearing before Senate Finance Committee on H. 2, Feb. 9, 1998, Tape SFC-98 #24, testimony of Deborah Vogt (Dept. of Law)."

. AS 43.23.095(7).

. AS 01.10.055(a)-(b).

. 15 Alaska - Administrative Code (AAC) 23.143(a) (2013). The Department also promulgated a list of objective indicia that provide proof bearing on a person's intent to remain indefinitely in the state. 15 AAC 23.173(g).

. Op. at 75 n. 19.

. Id.

. Former AS 43.23.008(b) (2007).

. Op. at 75.

. See Op. at 74.

. 15 AAC 23.163(a) (emphasis added).

. 15 AAC 23.163(b)(1) (emphasis added).

. It is regulation Department was aware of the physical presence concept, and therefore could have set a consecutive six-month physical presence requirement, but did not do so. The court states that ""we give due deliberative weight 'to what the agency has done, especially when the agency interpretation is longstanding.'"" Op. at 73. It appears that for the nearly ten years before this matter arose, and to this day, the Department interprets AS 43.23.008(b) to require a person to be a state resident for six months, not to require six consecutive months of physical presence. Yet the court disregards the Department's position and fails to explain why.

. See former AS 43.23.008(a)(1) (2007) (providing allowable absence for full-time secondary and postsecondary education).

. See former AS 43.23.008(a)(5) (2007) (providing allowable absence for "continuous medical treatment").

. See, eg., former AS 43.23.008(a)(2) (2007) (absence for vocational, professional, or certain other education); (a)(4) (absence for merchant marine service); (a)(6) (absence for providing care for certain critically ill family members); (a)(7) (absence for providing care for terminally ill family member); (a)(8) (absence for settling family member's estate); (a)(10) (absence while serving as a state employee). I also wonder how the court's new - interpretation - that AS 43.23.008(b) requires a continuous 180-day physical presence prior to departure would work for those seeking an allowable absence for serving in Congress or as congressional staff despite traveling back and forth between Washington, D.C. and Alaska. Cf. former AS 43.23.008(a)(9)-(10) (2007).

. Op. at 75 n. 20 (citing former AS 43.23.008(b) (2007).

. Former AS 43.23.008(b) (2007) (emphasis added).

. Dunn v. Blumstein, 405 U.S. 330, 350 n. 20, 92 S.Ct. 995, 31 LEd.2d 274 (1972) (emphasis added) (defining a durational residency requirement).

. Id. at 343, 92 S.Ct. 995 ("And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference.").

. See Martinez v. Bynum, 461 U.S. 321, 328, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983) ("A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents."); see also Dunn, 405 U.S. at 351, 92 S.Ct. 995 (''The State's legitimate purpose is to determine whether certain persons in the community are bona fide residents.").

. Dunn, 405 U.S. at 351, 92 S.Ct. 995.

. See 15 AAC 23.173(g).